STATE of Wisconsin, Plaintiff-Respondent,

v.

Christopher G. REINWAND, Defendant-Appellant. †
[Case Nos. 88–0230–CR, 88–0231–CR.]

STATE of Wisconsin, Plaintiff Respondent,

v.

Timothy J. REINWAND, Defendant-Appellant.
[Case No. 88–0232–CR.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Gilbert R. REINWAND, Defendant-Appellant. [Case
No. 88–0233–CR.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Bernadine REINWAND, Defendant-Appellant.
[Case No. 88–0234–CR.]

† Petition to review denied.

STATE of Wisconsin, Plaintiff-Respondent,

v.

Jalaine L. REINWAND, Defendant-Appellant.
[Case No. 88–0235–CR.]

Court of Appeals

*Nos. 88–0230–CR, 88–0231–CR, 88–0232–CR, 88–0233–CR, 88–0234–CR, 88–0235–CR. Submitted on briefs August 31, 1988.—Decided October 20, 1988.*

(Also reported in 433 N.W.2d 27.)

For the defendants-appellants the cause was submitted on the briefs of *John T. Manning,* of Wisconsin Rapids.

For the respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J.  Christopher Reinwand appeals from a judgment convicting him of battery to a police officer and resisting arrest. Several members of his family who were charged and convicted of obstructing an officer in connection with the same incident appeal their convictions as well. Because the state has

conceded error in the jury instructions relating to the charges of resisting arrest and obstructing an officer, those convictions will be reversed with respect to all defendants.[1] The error does not affect the felony battery charge against Christopher Reinwand, however.

Much of Reinwand's brief is devoted to arguing that, for a variety of reasons, the officer acted without lawful authority in arresting him and, as a result, both he and his relatives had a "right" to resist or obstruct the arrest. Because of the conceded error in all of the misdemeanor resisting and obstructing charges, however, the only conviction before us is Reinwand's felony conviction for battery to a police officer, and the officer's "authority" to arrest is not an element of that offense.[2] The only question remaining,

---

[1] All defendants requested an instruction on their right to resist (or obstruct) an unlawful arrest. The trial court denied that request and, although it correctly advised the jury that in order to convict on the resisting charges, the state must prove that the officer was acting within his lawful authority, it also stated that "[an] officer making an arrest is doing an act ... with lawful authority," and told the jurors that if they found that the officer "was making an arrest," they should also find that he was acting within his lawful authority. We agree with the state that the instructions were based on an erroneous view of the law and that they deprived the Reinwands of an instruction on the theory of their defense and relieved the state of its obligation to prove every element of the crime beyond a reasonable doubt.

We also agree that the battery verdict is not affected by the instructional error in defining the officer's authority, because, unlike the resisting and obstructing charges, the crime of battery to a police officer does not require proof that the officer be acting "with lawful authority." *State v. Barrett,* 96 Wis. 2d 174, 181, 291 N.W.2d 498, 501 (1980).

[2] Section 940.20(2), Stats., makes it a Class D felony to "intentionally cause[ ] ... harm to a law enforcement officer ...

then, is whether the trial court erred when it ruled that the evidence was insufficient to justify instructing the jury on the defense of self-defense.[3] Because we see no error, we affirm Reinwand's battery conviction.

acting in an official capacity ...." An officer who may use more force than is reasonably necessary in performing his or her duties is still acting in an "official capacity"—as opposed to some private or personal capacity.

[3]The state, citing *State v. Ivy,* 119 Wis. 2d 591, 350 N.W.2d 622 (1984), contends that we should also review the sufficiency of the evidence on the resisting and obstructing charges to determine whether the evidence was sufficient to convict. In *Ivy,* the defendant contended on appeal that the evidence was insufficient to support his conviction. The court of appeals, however, ruled that there were errors in the jury instructions and reversed on that ground, never reaching the claimed insufficiency of the evidence. The supreme court reversed, holding that "where a defendant claims on appeal ... that the evidence is insufficient to sustain the conviction, the appellate court is required to decide the sufficiency issue even though there may be other grounds for reversing the conviction that would not preclude retrial." *Id.* at 610, 350 N.W.2d at 632. If the appellate court concludes that the evidence was insufficient, considerations of double jeopardy would preclude ordering a new trial. If, on the other hand, the appellate court concludes that there was sufficient evidence to convict, a new trial would be appropriate.

We do not read Reinwand's brief as raising the sufficiency of the evidence as an issue on appeal. He argues only that the resisting and obstructing charges must be dismissed because the arrest was unlawful. He does not discuss the elements of the offenses or the evidence in support thereof. Because *Ivy* is explicit in conditioning the appellate court's duty to consider the sufficiency of the evidence on the defendant's "conten[tion] on appeal that his or her conviction is not supported by sufficient evidence," *id.* at 609, 350 N.W.2d at 632, we do not believe we are either obligated to, or should, do so here. Because the issue was not raised by Reinwand, we will assume there was sufficient evidence to convict

The charges grew out of a melee involving Wisconsin Rapids police officer James Henry and Christopher Reinwand (and several members of his family) when Henry attempted to arrest Reinwand for violating a city fireworks ordinance. Henry had been dispatched to the Reinwand property to investigate a complaint that fireworks were being discharged there. When he arrived, he saw two men lighting and throwing firecrackers in the yard. He testified that he approached the men, informed them that they were under arrest for discharging fireworks, took one by the arm and reached for the other. The second man—who turned out to be Christopher Reinwand—broke away and attempted to flee. Henry testified that he caught Reinwand and attempted to restrain him by holding him "above the shoulders." According to Henry, Reinwand was shouting and struggling to escape and soon several of his relatives came up and tried to free him by pulling on his arms and attempting to force Henry to relinquish his grip. The relatives eventually freed Reinwand, although Henry immediately caught him again by the hair. The relatives continued to try to pull Reinwand free, and Henry, still gripping Reinwand's hair, fell backwards over a short fence, with Reinwand on top of him. Eventually, the group was able to free Reinwand again and he fled to the house.

Henry stated that during all this time members of the Reinwand family were throwing objects at him, threatening him, and hitting, clawing and kicking him. He also testified that Reinwand bit him on the arm when the relatives first freed him, and that bite formed the basis of Reinwand's battery complaint.

and will remand the misdemeanor charges against all defendants for retrial.

Henry acknowledged that after Reinwand left the scene, a fist fight ensued involving himself and Reinwand's father and brother and that at one point he drew his pistol for a few moments, keeping the barrel pointed in the air, in an attempt to quell the disturbance. Eventually, other officers arrived on the scene and the incident subsided.

Reinwand and the other members of his family told an entirely different story. According to Reinwand, he first became aware of Henry's presence when Henry came up behind him and grabbed him around the neck in a "choke hold." He stated that Henry was strangling him to the point that he was turning blue and gasping for breath, and this was why he was screaming and trying to escape. Reinwand acknowledged that he bit Henry "fairly hard" and "in self-defense" immediately after Henry had released him when they fell over the fence. Other family members testified that Henry was choking Reinwand and dragging him around the yard by the hair, and that he drew his gun and yelled that he would kill Reinwand if the others did not go away. They said that he then pointed the gun at the head of each family member and threatened to "kill the whole family." According to the family witnesses, none of them ever struck, pushed, kicked or threatened Henry in any way, but were only trying to persuade him to stop choking Christopher Reinwand.

After the evidence was in, Reinwand requested that the jury be instructed on self-defense—that he had a privilege to use force to defend himself from Henry's excessive use of force in making the arrest. The trial court, noting Reinwand's own testimony that he did not bite Henry until after he had been released from what he claimed was the "choke hold," ruled

that there was no evidence in the record to support giving an instruction that he bit Henry in self-defense.

The state concedes that when a reasonable construction of the evidence would support a theory that a defendant properly acted in self-defense to resist the use of excessive force by an arresting officer, the issue should go to the jury. *State v. Mendoza,* 80 Wis. 2d 122, 153–54, 258 N.W.2d 260, 273 (1977). It argues, however, that no reasonable view of the evidence in this case supports such a theory, and we agree.

In *Mendoza,* the defendant was convicted of murdering two Milwaukee police officers who were attempting to arrest him. There was evidence that the defendant had been "beaten continually" by the officers and that he grabbed the gun one of them was using to strike him and fired at them in order "to stop what he characterized as their assault." *Id.* at 153, 258 N.W.2d at 273. The supreme court reversed the conviction on grounds, among others, that the trial court erred in failing to instruct the jury on the lesser offense of manslaughter (causing death unnecessarily in the exercise of self-defense) and on the defense of self-defense. In so ruling, the court commented on the "privilege" to defend against an unlawful arrest:

> Defendant had no privilege to interfere with an arrest, which may itself require a lawful use of force. But there are circumstances where a police officer's use of force is unlawful. An officer may be guilty of assault and battery if he [or she] uses unnecessary and excessive force or acts wantonly and maliciously. *Id.* at 154, 258 N.W.2d at 273–74.

Since *Mendoza,* there has been a trend toward limiting the common law right to resist an unlawful

arrest. By 1984, seventeen states had done so by statute or supreme court decision, and several federal appellate courts generally deny such a right. *See* Note, "Police Liability for Creating the Need to Use Deadly Force in Self-Defense," 86 Mich. L. Rev. 1982 (1988). But whatever may be the status of the privilege in Wisconsin today, we need not decide that issue, for the evidence in this case was insufficient to justify submitting any instruction on self-defense.

As we have said, Henry's version of the facts was that no excessive or undue force was used during his encounter with Reinwand, and he denied using any kind of "choke hold" on him that evening. It is possible, of course, that the jury could disbelieve Henry's account of the incident and instead accept the testimony of the family witnesses that he was unnecessarily choking or strangling Reinwand in attempting to make the arrest, and that this constituted unnecessary and excessive force. But, even so, Reinwand himself testified that he did not bite Henry until after he had been released from what he called a "choke hold." He agreed that biting Henry "wasn't necessarily to keep [Henry] from choking [him] because he wasn't choking [him] at that time."

The privilege of self defense "rests upon the need to allow a person to protect himself or herself . . . from real or perceived harm when there is no time to resort to the law for protection." *State v. Brown,* 107 Wis. 2d 44, 54, 318 N.W.2d 370, 376 (1982). There is a difference between the expected conduct of one arrested under more or less "normal" circumstances, and one arrested through the use of excessive force by the police. One who resists a lawful arrest not only commits a criminal offense by so doing, sec. 946.41(1),

Stats., but also justifies the officer in employing such force as is reasonably necessary to overcome the resistance and accomplish the arrest. *Johnson v. Ray,* 99 Wis. 2d 777, 781–82, 299 N.W.2d 849, 852 (1981). If, on the other hand, the officer employs excessive force in making the arrest, the person arrested may counter with the use of reasonable force to protect himself or herself, and if the officer is injured thereby, the person arrested may claim self-defense to any resulting battery charge. *Mendoza,* 80 Wis. 2d at 149–52, 258 N.W.2d at 271–73. And there is good reason for the distinction:

> Despite his [or her] duty to submit quietly without physical resistance to an arrest made by an officer acting in the course of his [or her] duty, even though the arrest is illegal, his [or her] right to freedom from unreasonable seizure and confinement can be protected, restored and vindicated through legal processes. However, the rule permitting reasonable resistance to excessive force of the officer, whether the arrest is lawful or unlawful, is designed to protect a person's bodily integrity and health and so permits resort to self-defense. Simply stated, the law recognizes that liberty can be restored through legal processes but life or limb cannot be repaired in a courtroom. And so it holds that the reason for outlawing resistance to an unlawful arrest and requiring disputes over its legality to be resolved in the courts has no controlling application on the right to resist an officer's excessive force. *State v. Mulvihill,* 270 A.2d 277, 280 (N.J. 1970).

It follows that the self-defense privilege should be coextensive with the use of that force. Because the privilege exists for the physical protection of the defender, it should end when the need for that

protection disappears—that is, when the use of excessive force has ceased or abated.

> The privilege [of self-defense] extends only to acts which are done for the purpose of protecting the actor from a presently threatened aggression. Therefore, it does not extend to acts done ... in retaliation for a past aggression ... or as a warning .... If the actor believes that the other's attempt to inflict bodily harm or an offensive contact upon him [or her] has been frustrated or abandoned, he [or she] is not privileged to inflict any bodily harm or offensive contact upon the other.

Restatement (Second) of Torts sec. 63 comment g (1965).

There is uncontradicted evidence that when Reinwand bit Henry, he had been released from what he claimed to be a "choke hold." As a result, any privilege he may have had to defend himself against what he believed to be the officer's "excessive" conduct was no longer available, for that conduct had ceased. We conclude, therefore, that the trial court correctly ruled that there was insufficient evidence to support submission of the self-defense issue to the jury.

We affirm Christopher Reinwand's conviction for battery to a police officer. We reverse Reinwand's conviction for resisting arrest and the convictions of the other appellants for obstructing an officer and remand those cases for new trials.

*By the Court.*—Judgments affirmed in part, reversed in part and causes remanded for further proceedings consistent with this opinion.