STATE of Wisconsin, Plaintiff-Respondent,

v.

Brian P. CUMMINGS, Defendant-Appellant.†

Court of Appeals

*No. 89–0847–CR. Submitted on briefs October 12, 1989.—Decided December 7, 1989.*

(Also reported in 451 N.W.2d 463.)

†Petition to review denied.

604

For the defendant-appellant the cause was submitted on the briefs of *Mary E. Waitrovich,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *David J. Becker,* assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J. Brian P. Cummings appeals from a judgment convicting him of battery to a correctional officer contrary to sec. 940.20(1), Stats. Cummings claims that: (1) the evidence was insufficient to prove each element of battery; (2) the trial court erred in refusing to provide a self-defense instruction; (3) the trial court violated his right to present a defense when it excluded the testimony of one of his witnesses; and (4) the trial court violated his right to a fair trial by allowing into evidence a statement he made to an officer that he had AIDS. We resolve all issues against Cummings and affirm the judgment and order.

Cummings is a prisoner at Waupun Correctional Institution. After a suicide attempt, he was taken to University Hospital where he became agitated and had to be restrained by several officers. He bit one of the officers in the arm while they were attempting to place belt restraints on him to confine him to his bed. A moment later, Cummings told the officer, "I've got AIDS and now you've got it."

Section 940.20(1), Stats., provides: "Any prisoner confined to a state prison . . . who intentionally causes bodily harm to an officer . . . without his or her consent, is guilty of a Class D felony." Cummings argues first that

the evidence was insufficient to establish that he was "confined to a state prison" at the time of the offense as required by that statute. He maintains that since he was in a hospital when he bit the officer, he was not so confined. We disagree.

Section 53.02, Stats., which defines the jurisdiction and extent of state correctional institutions provides that "*[e]very activity* conducted under the jurisdiction of and by the institution, *wherever located,* is a precinct of [Waupun] and each precinct is a part of the institution." (Emphasis added.) Cummings initially received medical treatment at Waupun where it was decided that he needed further treatment at the hospital. He was transferred from Waupun to the hospital under guard, and he remained under guard and in leg shackles while he was there. After he was treated, Cummings was transferred back to the prison.

The medical treatment Cummings received at the hospital was an activity conducted under the jurisdiction of the Waupun Correctional Institution. Accordingly, the hospital became a "precinct" of the prison and "part of the institution." A prisoner remains "confined" to a state prison when he is kept under guard while receiving medical treatment at a hospital.

Cummings next argues that the trial court erred when it declined to instruct the jury on self-defense. Cummings testified at trial that he bit the officer's arm because one of the officers was choking him. He could not identify at trial which officer allegedly choked him.

When a reasonable construction of the evidence would support a theory that a defendant properly acted in self-defense, the issue should go to the jury. *State v. Reinwand,* 147 Wis. 2d 192, 199, 433 N.W.2d 27, 30 (Ct.

App. 1988). In determining whether the trial court should have given the self-defense instruction, we view the evidence in the light most favorable to the defendant. *State v. Jones,* 147 Wis. 2d 806, 809, 434 N.W.2d 380 (1989).

Section 939.48(1), Stats., provides a privilege of self-defense "to . . . intentionally use force against another for the purpose of preventing or terminating what he [or she] reasonably believes to be an *unlawful interference* with his [or her] person by such other person." (Emphasis added.) Even when viewed in the light most favorable to Cummings, we do not believe he was confronted with an unlawful interference with his person or that the trial court erred in refusing to give a self-defense instruction.

The officer who was assigned to guard Cummings at the hospital testified that at one point Cummings "pulled the IVs out of his arm and pulled the heart monitoring pads off of his chest" and said, "I'm going back [to the prison]." The guard then gave Cummings a direct order to lie down on the bed, which Cummings refused to do. Another officer came to the guard's assistance and together they tried to get Cummings back into bed so they could apply a belt restraint to him. Eventually, three other officers were called to the room and Cummings continued to resist all orders to return to bed. While the officers attempted to place restraints on Cummings he "started to struggle, placing his hands across his chest . . ., refusing to give [the officers] his hands . . .."

Cummings himself testified that the guard gave him a direct order to lie down and that Cummings told him "F your direct order." Cummings further testified: "I took the I.V. out of my hand and I took the heart machine off and I told them I wanted to go back to prison, . . . I wasn't going to be chained up here and

treated like no animal." He admitted that the officers "told me a few times to lay down on the bed, and I refused." Finally, Cummings testified that:

> [The officers] got this chain out, and I had my arms across my chest and I told them they wasn't going to put that on me and I wasn't an animal, and they started pulling on my arms. And, I'm fairly strong. They was having difficulty pulling them, and they got frustrated and mad, and I don't know which one it was, but one of them grabbed my throat and I bit him.
>
> . . ..
>
> How long do you think your throat was grabbed?
>
> A few seconds.

Cummings does not dispute that he was resisting the officers. He was engaging in unlawful conduct when he refused to obey the officer's direct orders and when he physically resisted them. Wis. Adm. Code, secs. HSS 303.24(1)(a) and 303.28. The officers do not appear to have used unnecessary or unreasonable force in restraining him. By Cummings's own testimony, the officer's arm was on his throat for only a few seconds—a brief and legitimate response to the resistance he was putting forth. On these facts, the trial court could properly conclude that Cummings was not confronted with an "unlawful interference" which would warrant a self-defense instruction to the jury.

Cummings next argues that exclusion of the testimony of a defense witness denied him the right to present a defense. Specifically, he argues that the testimony of a pharmacist would have supported his theory that he lacked intent to harm the officer because his behavior was the result of the drugs he had taken. He contends

that the pharmacist's evidence would have "enhanced the credibility of his [own] testimony that he couldn't breath[e] because his throat was being squeezed and he did the biting because he felt panicky"—thus supporting his self-defense theory.

■

Admission or rejection of evidence is within the trial court's discretion, *In Interest of S.S.K.,* 143 Wis. 2d 603, 619, 422 N.W.2d 450, 456 (Ct. App. 1988), and rulings on evidentiary issues will be upheld on appeal absent an abuse of discretion. *Gonzalez v. City of Franklin,* 137 Wis. 2d 109, 139, 403 N.W.2d 747, 759 (1987).

The trial court explained its ruling as follows:

> The problem I have . . . with the pharmacist testifying is [that he] is going to get up and say that this medication is for this purpose and it has all these potential side effects . . .. [T]o allow the pharmacist to testify when he cannot relate that directly to Mr. Cummings is asking the jury to speculate. There are a whole range of potential or possible side effects . . . with that medication . . .. To that extent, there is a very substantial danger of confusion.
>
> . . ..
>
> I have no problem with proper medical testimony as to his actual condition, the nurse, the doctor, as to what [Cummings] was suffering from based upon their medical diagnosis, . . . as to what type of accelerated heart rate can do in terms of a person's mind or their ability to keep a train of thought . . .. And so, I'm not trying to exclude the defense [on] the issue of state of mind in general.

The trial court thus articulated the reasons for its decision and in deciding the issue it arrived at a conclusion a reasonable judge could reach. It did not abuse its discre-

tion. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982).

Finally, Cummings argues that the trial court violated his right to a fair trial by allowing into evidence his statement to the officer that he had AIDS. Cummings admitted he made such a statement and said he did it because he was angry. He did not then and does not now have AIDS. Cummings argues that admission of his statement was nonprobative and excessively prejudicial.

We believe that Cummings's statement to the officer was relevant. One of the elements the state had to prove was that Cummings *intended* to cause bodily harm to the officer. Cummings maintained throughout the trial that he did not intend to harm the officer—thus his statement, made only minutes after the assault, was relevant to his state of mind. Although the judge did not give a curative instruction that Cummings did not have AIDS, the jury was aware from the testimony that he had tested negative for the disease. Moreover, the prosecutor told the jury in his closing statement that "[t]here is no evidence in this case of any AIDS, and I want you to strike that from your mind." Under these circumstances, we cannot conclude that any possible prejudice resulting from admission of the statement outweighed its probative value.

*By the Court.*—Judgment and order affirmed.