STATE of Wisconsin, Plaintiff-Respondent,

v.

Kevin M. HERRIGES, Defendant-Appellant.†

Court of Appeals

*No. 89–1400–CR. Submitted on briefs January 24, 1990.—Decided March 7, 1990.*

(Also reported in 455 N.W.2d 635.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Waring R. Fincke* of *Dvorak & Fincke, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney

general, and *Sally L. Wellman,* assistant attorney general.

Before Brown, P.J., Scott and Nettesheim, JJ.

BROWN, P.J.   Kevin M. Herriges appeals from a judgment of conviction following a jury trial and convictions of battery to a police officer (two counts) and escape. He raises three claims of error in the jury instructions. He argues, first, that the instructions regarding self-defense failed to explain Herriges' theory of defense; second, that one who provokes an assault in his own home is excused from the statutory duty to exhaust all reasonable means of evading harm before he can avail himself of self-defense; and third, that the trial court erred in not instructing the jury that self-defense was an issue in the escape charge. We reject his arguments and affirm.

Hartford police officers Talajkowski and Klink went to an address in Hartford to arrest Herriges on seven outstanding warrants. At trial, state and defense presented two different versions of what then transpired. We summarize both.

In the state's account, Talajkowski first spoke to Herriges' mother. Herriges appeared behind her, was told of the warrants and said he had to get his shoes. He took two steps and then bolted through the front of the house. Talajkowski chased him and was able to grab his legs. Herriges kicked Talajkowski in the head and punched him in the face. Meanwhile, Klink seized Herriges around the waist, hanging on as tightly as possible. Herriges grabbed Klink's fingers and bent them back. He also punched Klink on the nose, struck him in the forehead and knocked his glasses off. Eventually, Herriges broke free and ran out of the house.

In the defense version, Herriges didn't know why the officers were at the door when he told his mother that he was going to get his shoes. Talajkowski followed him and grabbed his ankles. He fell, hitting his head on the couch. As he was rising, Klink grabbed him around the chest, holding on so tightly that he had trouble breathing and thought he would pass out. He was finally able to bend Klink's hand back so that he could breathe. He then ran out the door. He went to his brother's house and called his stepfather, who told him to turn himself in or he would be shot. He left for California, where he was arrested on August 29, 1988. He waived extradition and was returned to Wisconsin.

Herriges first argues that the trial court erred in failing to instruct the jury on his theory of defense regarding the charges of battery. We disagree.

Herriges' defense against the battery charges was that of self-defense. His proposed and rejected theory of defense instruction began: "It is the theory of the defense in this case that at the time Kevin Herriges caused bodily harm to [the officers] . . . he was privileged to use force in self-defense . . .."

■

A defendant is entitled to an instruction on his theory of defense if it is supported by the evidence and a timely request is made. *See State v. Pruitt,* 95 Wis. 2d 69, 81, 289 N.W.2d 343, 348 (Ct. App. 1980). However, the trial court has wide discretion in choosing the language of jury instructions and if the instructions given adequately explain the law applicable to the facts, that is sufficient and there is no error in the trial court's refusal to use the specific language requested by the defendant. *State v. Lenarchick,* 74 Wis. 2d 425, 455, 247 N.W.2d 80, 96 (1976).

Neither party disputes Herriges' entitlement to a self-defense instruction under the evidence presented and indeed such an instruction was given. To summarize, the jury was instructed that self-defense was an issue in the case. It was told that a person is privileged to use or threaten force reasonably believed necessary to terminate unlawful interference. It was also told that police officers are privileged to use force in making an arrest. This privilege was explained by the further statements that the officer is justified in using force that he reasonably believes is necessary to detain and prevent escape of the arrestee and to protect himself from bodily harm.

Herriges asserts that this language is inadequate. His proposed theory of defense instructions set forth that "the use of force beyond which a reasonable police officer would believe necessary under all the circumstances then existing is excessive and unlawful." Without this language, Herriges asserts, the jury was not told that the "unlawful interference" against which Herriges was privileged to defend is excessive force by a police officer.

We simply disagree. We note at the outset that Herriges' own instructions are couched in terms of "privilege"; that is, they state what Herriges is "privileged" to do in self-defense. Hence, he does not dispute that a reasonable jury understands "privilege" as that which is permitted, though otherwise criminal. *See* sec. 939.45, Stats.

██

The instructions given stated that police officers have a privilege to use force when making an arrest; that is, they may do what would otherwise be criminal under certain circumstances. The scope of the privilege was then set out: to use such force as is reasonably believed

needed to accomplish certain lawful ends. There can be no serious dispute but that this language tells the jury that any force used in excess of that described is outside the scope of the privilege and by definition unlawful. A jury could only conclude from these instructions that use of unreasonable force constitutes an unlawful interference. Because the jury was adequately instructed on the law of self-defense, we find no abuse of discretion in the court's rejection of Herriges' proposed instructions.

Herriges next argues that the trial court wrongly instructed the jury, in accordance with Wis JI—Criminal 815, that a defendant who provokes an attack has no privilege to act in self-defense unless he reasonably believes that he has exhausted every other reasonable means to escape or otherwise avoid death or great bodily harm. Herriges asserts that individuals have no duty to attempt retreat or evasion of harm if they are assaulted in their homes. This rule, the "castle" rule that recognizes home as safe harbor, is claimed to apply even where the assault is provoked by the one attacked. We reject the claim.

Some states impose a duty to take reasonable measures to retreat as a limitation on the privilege of self-defense. *See, e.g., Collier v. State,* 275 So. 2d 364, 367 (Ala. Crim. App. 1973); *Gainer v. State,* 391 A.2d 856, 860 (Md. Ct. Spec. App. 1978). The duty has often been modified by the rule that those assaulted in their own homes may stand their ground without losing the privilege of self-defense. *Id.* Justice Cardozo's poignant explanation for the rule is set out in *Gainer:* "It is not now and never has been the law that a man assailed in his own dwelling is bound to retreat. If assailed there, he may stand his ground and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home . . .. Whither shall he flee, and how

far, and when may he be permitted to return?" *Gainer,* 391 A.2d at 862.

The castle rule recognizes the importance of home as sanctuary but it is not without limits. The doctrine is for defensive and not offensive purposes. *Id.* The rule is therefore almost invariably recited as requiring that the one seeking to invoke it be without fault. *See, e.g.,* Annotation, *Homicide: Duty to Retreat Where Assailant is Social Guest on Premises,* 100 A.L.R.3d 532, 533, and cases cited therein; *see also Conley v. State,* 92 So. 2d 7, 9 (Ala. Ct. App. 1956); *State v. Sales,* 328 S.E.2d 619, 620 (S.C. 1985); *People v. Mroue,* 315 N.W.2d 192, 194 (Mich. Ct. App. 1981); *see also* 40 Am. Jur. 2d *Homicide* sec. 167 (1968): "[W]hile a person assaulted in his own house is not bound to retreat, his right to invoke this doctrine depends upon his being without fault in bringing on the difficulty."

Wisconsin has no statutory duty requiring a reasonable attempt to retreat, although whether the opportunity to retreat was available is sometimes a circumstance for consideration in determining whether the defendant reasonably believed the amount of force used was necessary to prevent or terminate the interference. Wis JI—Criminal 810. Our supreme court expressly abrogated the common-law duty to retreat in *Miller v. State,* 139 Wis. 57, 76, 119 N.W. 850, 858 (1909). The legislature, however, requires reasonable effort to retreat before self-defense can be successfully asserted by one who acts to provoke` an attack. Sec. 939.48(2), Stats. Wis JI—Criminal 815, given in this case, substantially echoes the statute:

> The Criminal Code of Wisconsin provides that a person who engages in unlawful conduct of a type likely to provoke others to attack him, and who thereby does provoke an attack, is not entitled to

claim the privilege of self-defense against such attack, except when the attack which ensues is of a type causing him reasonably to believe that he is in imminent danger of death or great bodily harm.

In such a case, he is privileged to act in self-defense, but he is not privileged to resort to the use of force intended or likely to cause death or great bodily harm to his assailant unless he reasonably believes he has exhausted every other reasonable means to escape from or otherwise avoid death or great bodily harm at the hands of his assailant.

Herriges concedes the propriety of a provocation instruction in this case but maintains that the castle doctrine precludes the language requiring reasonable avoidance. He offers no authority supporting that proposition, however. The weight of authority directs that the castle doctrine is inapplicable when provocation has occurred.

The Wisconsin Supreme Court itself indicated in *Miller* that the abrogation of the common-law duty to retreat does not extend to provocation, even in the home. Citing *Beard v. United States,* 158 U.S. 550, 563–64 (1894), the *Miller* court stated:

[T]he court below erred in holding that the accused, while on his premises . . . was under legal duty to get out of the way . . . .. [I]*f the accused did not provoke the assault* . . . he was not obliged to retreat, nor to consider whether he could safely retreat, but was entitled to stand his ground . . . .. [Emphasis added.]

*Miller,* 139 Wis. at 76, 119 N.W. at 858.

Nor can we discern any reason that the usually recognized limitation on the rule ought not to be followed. The home provides a haven, not an arena. "One assaulted in his house need not flee therefrom. But his house is his castle only for the purposes of defense. It

cannot be turned into an arsenal for the purposes of offensive effort against the lives of others. It is a shelter, but not a sally-port." *Raines v. State,* 455 So. 2d 967, 972 (Ala. Crim. App. 1984). We therefore follow the direction given by our supreme court in *Miller* and adopt the rule that if there has been provocation by the one assaulted, even if that provocation occurs in the home, successful assertion of self-defense requires a reasonable belief that one cannot retreat before force likely to cause death or great bodily harm may be used.

The instruction given here reflects the rule. Only if the jury first found provocation was the jury directed to determine whether Herriges believed that he had exhausted every other reasonable means of avoiding harm before resorting to force. This accurately reflects the law of self-defense in Wisconsin. Since Herriges does not dispute that provocation was an issue in this case, his argument that the instruction was erroneous must fail.

Last, Herriges argues that he was entitled to a self-defense instruction with respect to the charge of escape. We disagree. The evidence was insufficient to support such an instruction on this charge.

When a reasonable construction of the evidence would support a theory that a defendant properly acted in self-defense, the issue should go to the jury. *See State v. Reinwand,* 147 Wis. 2d 192, 199, 433 N.W.2d 27, 30 (Ct. App. 1988). However, escape is a continuing offense. *Parent v. State,* 31 Wis. 2d 106, 109-10, 141 N.W.2d 878, 881 (1966). It is not limited to the moment of departure. The evidence in this case does not support an argument that the perceived danger remained undissipated in the two and one-half months preceding Herriges'

apprehension in California. He should therefore have turned himself in once any perceived danger from the arresting officers had abated. *See id.* at 110, 141 N.W.2d at 881. Because the self-defense privilege exists for the physical protection of the defender, it should end when the need for that protection disappears—that is, when the use of excessive force has ceased or abated. *Reinwand,* 147 Wis. 2d at 201–02, 433 N.W.2d at 31.

In support of his assertions that he was never out of danger, Herriges points to his testimony that he was told by his stepfather to "turn [yourself] in or they're going to shoot you." This evidence, however, is support for refusing the instruction. The threat to Herriges, as he understood it, was in remaining at large. Turning himself in would have removed the danger.

*By the Court.*—Judgment affirmed.