STATE of Wisconsin, Plaintiff-Respondent,

v.

LaVere D. WENGER, Defendant-Appellant.†

Court of Appeals

*No. 98–1739–CR. Submitted on briefs December 14, 1998.—Decided January 12, 1999.*

(Also reported in 593 N.W.2d 467.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Richard L. Wachowski* of *Wachowski, Johnson & Cohen, S.C.* of Eau Claire.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Warren D. Weinstein,* assistant attorney general.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J. Following a jury trial, LaVere Wenger appeals a judgment of conviction for second-degree reckless injury with a dangerous weapon contrary to §§ 940.23(2) and 939.63(2), STATS.[1] On appeal,

---

[1] The judgment of conviction notes that the jury convicted Wenger of first-degree injury by reckless conduct contrary to § 940.23(1), STATS. In contrast, the verdict reflects that the jury found him guilty of second-degree injury by reckless conduct contrary to § 940.23(2): "We, the jury, find the defendant, LaVere Wenger, guilty of Second Degree Reckless Injury as charged in the information." The jury also answered "yes" to the following question: "Did the defendant commit the crime of Second Degree Reckless Injury while using a dangerous weapon?" Additionally, the trial court instructed the jury on § 940.23(2), as well as on use of a dangerous weapon under § 939.63(2), STATS. While the criminal complaint indeed cites subsec. (1), the information cites § 940.23(2), and the verdict and the jury instructions refer to the information, not the criminal complaint. Moreover, the parties agree that he was convicted under subsec. (2), not subsec. (1). Based on our review of the record, we

Wenger contends that the trial court erred by: (1) giving a jury instruction on his obligation to retreat regarding self-defense because he had no such obligation; and (2) excluding evidence about the victim's specific prior violent acts. Additionally, Wenger urges us to grant a discretionary reversal under § 752.35, STATS., because the jury instruction and "introduction of *McMorris* evidence"[2] prevented the real controversy, his claim of self-defense, from being fully tried.

First, we conclude that the trial court properly instructed the jury on retreat because retreat goes to the reasonableness of Wenger's conduct. Second, we hold that any error claimed in excluding evidence of the prior violent acts was harmless. Finally, we decline his request for a discretionary reversal pursuant to § 752.35, STATS., because the real controversy was fully tried. Accordingly, we affirm the judgment.

## I. FACTS

The victim, Randy Mueller, was married to Jackie Wenger for approximately two years. After Mueller and Jackie divorced, she married LaVere Wenger. Jackie then divorced Wenger and began dating Mueller. Jackie and Mueller lived together and were still living with each other in January 1997 when Wenger shot Mueller.

On January 4, 1997, Jackie went to Carol and Butch's Bar in Alma to watch a football game. Mueller, a dairy farmer, had asked Jackie to pick up some farming supplies so that he could complete his evening

---

assume that the judgment's reference to subsec. (1) in the judgment of conviction is a typographical error and that its omission of § 939.63(2) was an oversight.

[2] *See McMorris v. State*, 58 Wis. 2d 144, 205 N.W.2d 559 (1973).

chores. After she watched the game, Jackie was supposed to bring the supplies home. Jackie saw Wenger at the bar, and the two watched football and drank beer. When Mueller called Jackie at the bar between 5 and 5:30 p.m., she indicated that she would be home soon.

Wenger and Jackie left the bar and went to another bar, the Dam View, where they stayed for one-half hour to an hour before going to Wenger's home. Mueller learned that Jackie had gone home with Wenger. While the parties agree that Mueller then drove to Wenger's residence, they disagree about why; Mueller testified that he wanted to talk to Jackie and take her home, but Wenger asserts that Mueller wanted to harm him.

Mueller knocked loudly on the door, and Wenger answered. The parties disagree as to what happened next. According to Mueller, Wenger opened the door, the two talked, and Wenger invited him in. Mueller then told Wenger that he wanted to talk to Jackie, but Wenger, who was either "half sleeping" or "drunk," did not seem to understand Mueller. Wenger said that Jackie did not want to be bothered, and he refused to let Mueller talk to her. Then Wenger "lunged forward," and Mueller "chucked him on the side of the chin." Mueller noticed Jackie's coat and boots near the doorway and bent down to pick them up as proof that Jackie had been there.

When Mueller stood up, Wenger was standing in front of him with a gun pointed at his chest; Wenger flicked off the safety and told Mueller to "get out." Mueller complied, slamming the porch door en route to his truck. Mueller planned to go home. As he was walking back to his car, he felt himself "spiraling," lost

consciousness, and fell. Wenger had shot Mueller in the legs.

Wenger had a different account of the shooting. He testified that when he responded to Mueller's banging on the door, Mueller was upset, red in the face, and angry. Mueller demanded to talk to Jackie, and when Wenger refused his request, Mueller tried to choke Wenger. Then Wenger "flew through the air," hit the wall and refrigerator, and lost consciousness. When he regained consciousness, he was in his living room and saw Mueller, who was inside, looking at him with a "very strange look, very angry look" on his face.

At that point, Wenger remembered that he had a loaded shotgun in his bedroom that he kept to protect himself from Mueller. Wenger retrieved the gun, pointed it at Mueller, and "ordered" him to leave. In response, Mueller said nothing and looked "straight ahead like he didn't see me." Wenger repeatedly told him to leave, but when Mueller refused, Wenger clicked off the safety, and Mueller left. Then Wenger heard glass breaking, but stayed in the house for a second or two before he went outside to check if Mueller was gone. Wenger found Mueller approximately ten to twelve feet away from him on the stoop's bottom step and told Mueller to "get going and keep going." Mueller replied, "I am, but I am coming right back in," and Mueller turned ninety degrees.

Wenger then became concerned that Mueller would grab the gun. Because Wenger thought Mueller was coming back in the house, he intentionally shot him, aiming "low so it would hit him in the foot or whatever just to stop him." Immediately, Wenger called the police and told them he had shot Mueller and that Mueller needed help. Although Wenger acknowledged that he had consumed a "fair amount of beer"

500

that day, he did not believe it affected his recollection of the events.[3] Further, he testified that he shot Mueller because he was "afraid he was going to come back and attempt my life again."

The shot severely injured Mueller's right and left legs, and as a result, he later had his left foot amputated. The primary issue at trial was whether Wenger shot Mueller in self-defense. The jury concluded that Wenger had not acted in self-defense and convicted him of second-degree reckless injury by use of a dangerous weapon. This appeal followed.

## II. ANALYSIS

The privilege of self-defense is statutory. Because this is a self-defense claim, we set forth the self-defense statute, § 939.48(1), STATS., before addressing Wenger's claims of error:

> A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person. *The actor may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference.* The actor may not intentionally use force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.

*Id.* (emphasis added). With this statute in mind, we turn to Wenger's three arguments.

---

[3] Wenger's blood alcohol level was 0.15%.

## 1. Jury Instructions

Wenger first argues that the trial court erred by giving the pattern jury instruction on self-defense and retreat, WIS J I—CRIMINAL 810, because under *Miller v. State*, 139 Wis. 57, 119 N.W. 850 (1909), there is no duty to retreat, particularly in one's own home. *See State v. Kelley*, 107 Wis. 2d 540, 319 N.W.2d 869 (1982); *State v. Herriges*, 155 Wis. 2d 297, 455 N.W.2d 635 (Ct. App. 1990). The jury instruction provides:

> There is no duty to retreat. However, in determining whether the defendant reasonably believed the amount of force used was necessary to prevent or terminate the interference, you may consider whether the defendant had the opportunity to retreat with safety, whether such retreat was feasible, and whether the defendant knew of the opportunity to retreat.

WIS J I—CRIMINAL 810.

█

It is well established that a trial court has wide discretion in instructing the jury based on the facts and circumstances of each case. *See State v. Vick*, 104 Wis. 2d 678, 690, 312 N.W.2d 489, 495 (1981). "This discretion extends to both choice of language and emphasis. A trial judge should exercise discretion . . . to fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence." *Id.* (internal quotation marks and quoted source omitted). The burden is on the party challenging the jury instructions to specifically identify the error. *Howard v. State Farm Mut. Auto. Liab. Ins. Co.*, 70 Wis. 2d 985, 996, 236 N.W.2d 643, 648 (1975). When we review a discretionary decision, we test whether the trial court rationally applied the appropri-

ate legal standard to the relevant facts before it. *See Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 471, 326 N.W.2d 727, 732 (1982). Accordingly, we must focus on the trial court's reasoning, which is as follows:

> The point I think is Wisconsin does have an objective portion to their self-defense law, so it is not a matter of what Mr. Wenger thought was reasonable entirely that's the issue. The issue is whether a reasonable person confronted with this situation would have acted in the fashion Mr. Wenger did. I think therefore the portion of retreat instruction in this case is relevant to the case as set forth . . . .

No arguable basis exists for challenging the trial court's instructions. The statutory privilege of self-defense requires that the actor refrain from intentionally using force intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself. Section 939.48(1), STATS. While Wisconsin has no statutory duty to retreat, whether the opportunity to retreat was available may be a consideration regarding whether the defendant reasonably believed the force used was necessary to prevent or terminate the interference. *See Herriges*, 155 Wis. 2d at 303, 455 N.W.2d at 638. Evidence was presented that Wenger may have had an opportunity to retreat, and under Wisconsin law, retreat goes to the reasonableness of the defendant's conduct. *See id.; see also* WIS J I—CRIMINAL 810 cmt.

Here, the trial court used the pattern instruction to inform the jury of the applicable law on retreat. The jury instruction put squarely before the jury the dis-

puted issue of whether Wenger's use of deadly force was reasonably necessary to "prevent or terminate the interference," as there was evidence that Wenger may have been able to retreat safely into his house and lock the door. The feasibility of retreat goes to the reasonableness of Wenger's belief that he needed to shoot Mueller to prevent or terminate the interference. *See Herriges*, 155 Wis. 2d at 303, 455 N.W.2d at 638. In short, the evidence warranted the instruction, and the trial court properly exercised its discretion in giving the instruction. *See Vick*, 104 Wis. 2d at 690–91, 312 N.W.2d at 495.[4]

## 2. Evidence Regarding Mueller's Specific Prior Acts

Next, Wenger contends that the trial court erred by prohibiting evidence regarding the victim's violent and turbulent acts (*McMorris* evidence) from witnesses

---

[4] The State argues that the trial court did not err by giving the pattern jury instruction on retreat because Wenger was not entitled to a self-defense instruction; therefore, the State argues, Wenger cannot complain of an alleged error in giving the retreat instruction. Based on the following testimony by Wenger, the State argues that Wenger could not reasonably have believed that he was threatened with imminent death or great bodily harm to justify the use of deadly force: (1) Mueller was 10 to 12 feet away from him at the time of the shooting; (2) Mueller was turning at a 90-degree angle; and (3) Mueller had no weapon. Looking at all the evidence in the light most favorable to the Wenger's theory, however, *see State v. Jones*, 147 Wis. 2d 806, 816, 434 N.W.2d 380, 383 (1989), Wenger was entitled to a self-defense instruction because, accepting Wenger's testimony regarding the day's events and his fear of Mueller, Wenger's belief regarding the necessity of deadly force was reasonable.

who had not communicated these observations to him and from refusing to allow him to cross-examine Mueller regarding his use of medication for "prior psychiatric problems." *See McMorris v. State*, 58 Wis. 2d 144, 205 N.W.2d 559 (1973). Before trial, the trial court held a suppression hearing on Wenger's motion to admit *McMorris* evidence, including a March 20, 1996, incident in which Mueller caused a disturbance after learning that Jackie wanted to resume a relationship with Wenger. Paramedics and police were called in response to the disturbance, and Mueller received psychiatric treatment as a result.

At a pretrial hearing, Wenger further sought to present witnesses to establish that at the time of the incident and thereafter, Mueller threatened Wenger's life and safety.[5] Significantly, Wenger was not present during the March 20 incident and therefore did not personally hear the threats; rather, third parties informed Wenger of both the incident and the threats. Wenger hoped to introduce evidence of Mueller's violent conduct by the testimony of witnesses who observed the acts but had not communicated their observations to Wenger.

The State argued that such evidence should be excluded because: (1) it was irrelevant as the prior incident did not involve a weapon; (2) it was unfairly prejudicial because it was remote in time and would

---

[5] At trial, Jackie testified that Mueller told her that he intended to shoot Wenger on March 20. On cross-examination, however, she acknowledged that Mueller had not mentioned Wenger by name; rather, Mueller told Jackie that he intended to shoot someone, and it was not her. Mueller testified that on March 20, he "had all the intentions of killing [himself]."

confuse the jury;[6] and (3) the real purpose was to show Mueller's propensity for violence. The trial court asked Wenger's counsel if the proffered witnesses who viewed the March disturbance were different from those who told the defendant what allegedly occurred on March 20. When counsel replied affirmatively, the trial court refused to allow evidence from witnesses who did not communicate their observations and knowledge to Wenger.

Wenger agreed that the trial court's analysis was correct unless the State were to dispute the facts of the March 20 incident. The trial court responded as follows:

> In my opinion it is a relevant point to allow the defendant to bring in the evidence what occurred on March 20th, 1996 as it was communicated to the defendant by witnesses who observed the . . . incident . . . to inform the jury of what was in the defendant's mind at the time he was confronted [by Mueller] who . . . indicated to the defendant he was not going to leave the premises after allegedly [having] a violent confrontation on the defendant's property. I think that is sufficient to allow the evidence of what occurred on the 20th of March 1996 at least as it was communicated to the defendant. . . . As I indicated before, any witness who observed the incident on March 20th but who did not communicate what they observed to the defendant directly would not be allowed to testify as part of the defendant's case in chief. At most it would be rebuttal if in

---

[6] The State argued that in the 10 months between the March 20 incident and the shooting, Wenger and Mueller "spoke frequently and were cordial." The State also disputed Wenger's account of the incident and was concerned that the jury would also be trying the March 20 incident.

fact it becomes relevant depending on how the state deals with that evidence as presented by the defendant.

Relying on *McMorris*, 58 Wis. 2d 144, 205 N.W.2d 559; *McAllister v. State*, 74 Wis. 2d 246, 246 N.W.2d 511 (1976); and *State v. Daniels*, 160 Wis. 2d 85, 465 N.W.2d 633 (1991), Wenger argues that the trial court erred by precluding him from "presenting any other evidence of prior acts of the victim that would lend credibility to the defendant's claim of self-defense other than that specifically communicated to him."

 Generally, evidence of other crimes, wrongs, or acts is inadmissible to prove a person's character or to show that he acted in conformity therewith. Section 904.02(2), STATS. However, when self-defense is raised as an issue, and if there is a factual basis to support a self-defense claim, the defendant may, in support of the defense, establish what the defendant believed to be the victim's violent character by proving prior specific instances of violence within his knowledge at the time of the incident. *See McMorris*, 58 Wis. 2d at 152, 205 N.W.2d at 563. Such evidence enlightens the jury regarding the defendant's state of mind at the time of the incident and assists the jury in deciding whether the defendant acted as a reasonably prudent person would under similar beliefs and circumstances. *See Daniels*, 160 Wis. 2d at 94, 465 N.W.2d at 636 (citing *McMorris*, 58 Wis. 2d at 151, 205 N.W.2d at 563). If the defendant seeks to admit evidence of the victim's prior violent acts to establish the defendant's own state of mind at the time of the assault, it must be shown that before the assault, the defendant knew of the victim's violent acts. *See McMorris*, 58 Wis. 2d at 152, 205 N.W.2d at 563.

507

The defendant's proof of the victim's prior violent acts of which he was aware is not limited to the accused's own testimony. *Daniels*, 160 Wis. 2d at 95, 465 N.W.2d at 636. The self-serving nature of the defendant's testimony about the victim's prior violent acts makes corroborating evidence of those acts important for the defendant's self-defense claim. *Id.* Thus, within the trial court's discretion, the defendant should be allowed to produce supporting evidence to prove that the particular acts of which the defendant claims knowledge actually occurred, "thereby proving the reasonableness of the accused's knowledge and apprehension of the victim and the credibility of his assertions about his state of mind." *Id.* (discussing *McAllister*).

We agree that *McAllister* and *Daniels* seem to indicate that evidence concerning the reality or actuality of the victim's prior specific violent acts is admissible to prove the reasonableness of the defendant's knowledge and lend credibility to his assertions about his state of mind. We also agree that these cases indicate that the witnesses need not have communicated these observations to the defendant. However, without deciding whether the trial court erred by excluding such evidence, we hold that, even it was error, it was harmless.

■

The test for harmless error is "whether there is a reasonable possibility that the error contributed to the conviction." *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985). In applying the harmless error test, the "reviewing court [must] set aside the verdict . . . unless [it is] sure that the error did not influence the jury." *Id.* at 543, 370 N.W.2d at 231. To determine if harmless error exits, the court should focus on whether "the error undermines the court's con-

fidence" in the case's outcome. *State v. Grant*, 139 Wis. 2d 45, 51, 406 N.W.2d 744, 747 (1987) (citing *Dyess*, 124 Wis. 2d at 545, 370 N.W.2d at 232). A reviewing court must consider the error in the context of the entire trial and consider the strength of untainted evidence. *See id.* at 53, 406 N.W.2d at 748.

First, Wenger testified regarding: (1) the March 20 incident; (2) an incident after March 20, but before the shooting, in which Mueller came "tearing into" his yard to talk to Jackie; and (3) a conversation between Mueller and Jackie during which Mueller allegedly indicated that he had a gun on March 20 and had intended to shoot Wenger. In addition, Wenger testified that Donald Ganz also told him about the March 20 incident. Likewise, Jackie testified that she told Wenger about the March 20 incident, that Mueller had "ransacked" her trailer, and that she told Wenger that Mueller had told her that he was going to kill Wenger.

■

When corroborating evidence of the victim's prior specific violent acts is cumulative, our courts have excluded it on grounds that it surpassed the legitimate purpose of establishing what the defendant believed to be the victim's violent character, and instead, demonstrated the victim's violent propensity. *See McAllister*, 74 Wis. 2d at 251, 246 N.W.2d at 514; *Daniels*, 160 Wis. 2d at 106–07, 465 N.W.2d at 640–41. While the trial court's "total ban, without any reasonable rationale existing in the record, of all non-cumulative corroborating evidence" led the *Daniels* court to reject the State's harmless error argument, here, by contrast, any additional testimony would have been cumulative or as the trial court notes, "collateral," and would have had the effect of showing Mueller's propensity for violence.

■ Further, unlike in *Daniels*, the trial court here indeed allowed evidence to help establish Wenger's privilege of self-defense, that is, his state of mind and the reasonableness of his actions. *See id.* at 109, 465 N.W.2d at 642. Thus, we are confident there is no reasonable probability that the exclusion of this cumulative testimony contributed to the conviction. *See Dyess*, 124 Wis. 2d at 543, 370 N.W.2d at 231–32.

Second, while it is true that the State at least implicitly disputed the factual details of the March 20 incident,[7] the State points out that Wenger's brief fails to name the witnesses he wished to call and those who were barred. In addition, Wenger also fails to identify the records he claims were erroneously excluded.[8]

---

[7] In its rebuttal closing argument, the State argued that:

> The March 20, '96 incident, the incident ten months before. [Wenger's counsel] says it is uncontroverted, it is an established fact that this or that, right? What is uncontroverted, and I can't take issue with it, is that LaVere was told these things. Doesn't mean that it is true. If LaVere was told those things that affects his state of mind, but it does not mean that Randy Mueller carried a gun in his car or any other of those things that they talked about. I can't respond to what LaVere says he was told, but the point of the testimony is not that those facts are true, but supposedly what LaVere has in his mind.

[8] In his pretrial motion to suppress, Wenger argued that Mueller's medical records were relevant to establish [Wenger's] innocence or guilt. The trial court conducted an in-camera inspection of the records and determined that they were irrelevant. Wenger's one-word reference in his brief to the trial court's exclusion of records, without further elaboration, renders his argument undeveloped; therefore, we will not address it because we would first have to develop it. *See Barakat v. DHSS*, 191 Wis. 2d 769, 786, 530 N.W.2d 392, 398 (Ct. App. 1995) ("amorphous and insufficiently" developed arguments need not be considered).

Also, under the trial court's ruling, Wenger could have called Ganz to the stand but did not. Further, Wenger filed no reply brief pointing out which witnesses he would have called to support his self-defense claim.

In fact, the only excluded evidence to which Wenger specifically directs our attention was that concerning Mueller's medication; Wenger hoped to use this evidence to impeach Mueller. Wenger claims that this was "directly relevant to the knowledge of the defendant which would support his claim of self-defense," and that the trial court refused to allow him to make an offer of proof regarding its relevancy. However, aside from this conclusory argument, he fails to tell us how this evidence is relevant to his knowledge. Thus, we need not address this contention. *See Barakat v. DHSS*, 191 Wis. 2d 769, 786, 530 N.W. 2d 392, 398 (Ct. App. 1995).

### 3. Discretionary Reversal Under § 752.35, Stats.

Finally, Wenger requests a discretionary reversal under § 752.35, Stats., because the trial court's errors in giving the jury instruction and excluding *McMorris* evidence prevented the real controversy from being fully tried. Section 752.35 allows us to reverse a judgment if the real controversy has not been fully tried or for any reason it is probable that justice has miscarried. *See Vollmer v. Luety*, 156 Wis. 2d 1, 16–17, 456 N.W.2d 797, 804 (1990).[9] To reverse because the real

---

Further, Wenger's brief contains one citation to the record. An appellate brief must contain citations to the record for those parts of the record relied upon. *See* § 809.19(1), Stats.

[9] Section 752.35, Stats., provides, in pertinent part:

In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is

controversy has not been fully tried, we need not determine if the probability of a different result exists on retrial. *See id.* Our courts have reversed judgments pursuant to § 752.35 when, for example, the trial court erroneously excluded evidence or gave an erroneous jury instruction that prevented the real controversy from being fully tried. *See State v Harp*, 161 Wis. 2d 773, 781–82, 469 N.W.2d 210, 213–14 (Ct. App. 1991).

We conclude that the jury instruction was not error and that any error regarding exclusion of *McMorris* evidence was harmless. Therefore, support for Wenger's argument fails. The real controversy, whether Wenger acted in self-defense when he shot Mueller, was fully tried. Thus, we reject Wenger's request for a new trial under § 752.35, STATS.

*By the Court.*—Judgment affirmed.

---

probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record . . . .