STATE of Wisconsin, Plaintiff-Respondent-
Petitioner,

v.

Patrick JONES, Defendant-Appellant.

Supreme Court

*No. 86–1559–CR. Argued December 1, 1988.—Decided January 20, 1989.*

(Also reported in 434 N.W.2d 380.)

For the plaintiff-respondent-petitioner the cause was argued by *David J. Becker*, assistant attorney

general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-appellant there was a brief by *William J. Tyroler,* and *Richard J. Johnson,* both assistant state public defenders, and oral argument by *Mr. Johnson.*

SHIRLEY S. ABRAHAMSON, J. The state seeks review of an unpublished decision of the court of appeals filed May 11, 1988, reversing the defendant's conviction in the circuit court for Racine county, Stephen A. Simanek, circuit judge, of second degree murder by use of a dangerous weapon, in violation of secs. 940.02(1) and 939.63(1)(a)2, Stats. 1985–86.[1]

The question presented on review is whether the circuit court erred in refusing to instruct the jury on the "defense of others" privilege set forth in sec. 939.48(1) and (4), Stats. 1985–86.[2]

The court of appeals held that the circuit court committed reversible error by refusing to instruct the jury on the defense of others privilege. We agree with the court of appeals that, under the facts of this case, the defendant was entitled to the jury instruction, and

[1] The defendant was charged with a single count of first degree murder by use of a dangerous weapon. The jury convicted him of the lesser offense of second degree murder by use of a dangerous weapon.

[2] The defendant raises two issues that were not addressed by the court of appeals. First, the defendant argues that the circuit court erred by denying the request for an instruction on defense of self. Second, the defendant maintains that a mistake in the wording of the jury instruction on the elements of second degree murder was prejudicial error. We need not, and do not, consider these issues, because we affirm the court of appeals' decision remanding the case for a new trial.

we therefore affirm the decision of the court of appeals.

In determining whether the circuit court should have given the defense of others instruction, this court must view the evidence in the light most favorable to the defendant. *State v. Mendoza,* 80 Wis. 2d 122, 152–53, 258 N.W.2d 260 (1977). Accordingly we summarize the evidence in the light most favorable to the defendant.

On the afternoon of April 25, 1985, the defendant's sister Eunice Jones and Donald Price were standing outside the defendant's home, arguing about some keys. Price and Eunice lived together, and Price had on previous occasions beaten Eunice, "to the point of being bloody," according to the record.

Price was known to be violent when drunk, and on that day he was "quite drunk," in the opinion of the state's expert pathologist. His blood alcohol content was .316, a level that required up to 15 drinks in a two-hour period.

On a prior occasion, Price had threatened the defendant with a rifle for intervening on Eunice's behalf. Another time, Price put his fist through a window in his efforts to break into the Jones family's home, where Eunice had taken refuge from him.

Price was 38 years old, close to 6 feet tall and described as being "well-muscled." The defendant was 17 years old and approximately 5 feet 4 inches to 5 feet 6 inches tall.

In the course of the argument with Eunice, Price began "cursing, talking crazy talk" and hitting Eunice. The defendant, his mother, and others were standing nearby.

The defendant's mother told Price to stop hitting her daughter. Price pushed the defendant's mother

away and threatened to kill her. The defendant then intervened, telling Price to stop hitting his mother. Price's response was to push the defendant down several porch steps. During his exchange with the defendant and the defendant's mother, Price continued to hold onto Eunice. The defendant told Price to release Eunice, and Price responded by striking the defendant with his fist.

The defendant said he viewed Eunice as "badly bruised" and he was fearful for Eunice's safety because Price refused to let her go. The defendant testified that he thought that if he did not stop Price, Price might kill her. The defendant ran into the house, grabbed a butcher knife and ran back outside. Price was still holding Eunice, twisting her arm and hitting her in the face. The defendant approached Price and swung at him with the knife. The swing did not connect.

The defendant testified that, after his first swing missed, "I [the defendant] stood there for about two minutes, and I asked him to let go of my sister, and she finally broke loose. He came walking towards me, and he swung, and he bumped on it [the knife] like that, and he just—he just fell backwards on his back."[3] The defendant denied that he intended to stab Price. His motive in getting the knife and confronting Price was to stop Price.

The defendant does not dispute that Eunice had broken free from Price before the stabbing occurred. The defendant testified that he didn't know where Eunice had gone when she broke free. The defendant

[3]An expert pathologist testified that, since the knife entered Price's chest in the area between two ribs, the fatal wound could have occurred as a result of Price's thrusting himself onto a knife held stationary by the defendant.

testified on cross-examination that if Eunice said she had gone in the house, he "guessed" she was telling the truth.[4]

The defendant described what happened between Eunice's breaking free and the stabbing as follows:

> Q. Why don't you step down. Use this pen as the knife.
>
> . . .
>
> A. Yes, sir. Came with the knife like this. I brought it over and did like this, but I didn't hit him. I stood there for about two minutes, and I asked him to let go of my sister, and she finally broke loose. He came walking towards me, and he swung, and he bumped on it like that, and he just—he just fell backwards on his back.
>
> . . .
>
> A. I just swung it, but it didn't—it didn't come near him no part [sic].
>
> Q. Was that when you for two minutes about told him to just go about his business?
>
> A. Yes, sir.
>
> Q. And he still had Eunice, right?
>
> A. Right.
>
> Q. And—And was he still hitting Eunice?
>
> A. Yes.
>
> Q. Okay. Then she broke free?
>
> A. Yes.
>
> Q. And then Donald [Price] swung at you?
>
> A. Right.

---

[4]His "guess" was the result of the following cross-examination:

> Q. Are you saying she's [Eunice is] lying?
>
> A. No, I'm not saying she's lying.
>
> Q. Well, who would know best whether or not she was out there when the stabbing occurred? Wouldn't she know best?
>
> A. I guess she would.

Q. Did you move the knife?
A. No, I did not ....
Q. Did you mean for that to happen?
A. No, I was just—I was just trying to get him to go—to go cool off and come back later on, but when my sister broke free, when I had the knife like this, he just swung at me, and *it just happened so fast,* and he just fell on his back. He swung. (Emphasis added.)

The defendant again described the timing of the events on cross-examination as follows:

Q. And you swung the knife over your shoulder and forward, is that correct?
A. Yes.
Q. And then you stood there you say for two minutes, is that correct?
A. Minute or so, yes I did.
Q. A minute or so. So he was standing facing you for a minute or so.
A. No, he was—he had my sister by that time. When I swung the knife, she broke free from him, and he started walking towards me and swung at me.

The defendant further testified on cross-examination about the time between Eunice's breaking free and the stabbing as follows:

Q. And it's your statement today that how many minutes passed before the stabbing occurred after she left?
A. Approximately about one or two minutes.

According to one witness, Price still had Eunice in his grasp "just before" the knifing. The jury could conclude from the examination of this witness that when the defendant came at Price with the knife,

Eunice broke free "[j]ust then" and Price got in a fighting stance and "was getting ready to swing at" the defendant; Price then swung at the defendant and landed on the knife which was being held "still."[5]

The circuit court concluded that there was evidence arguably supporting a defense of others instruction, but denied the defendant's request for the instruction for two reasons. First, the circuit court ruled, a defense of others justification (an intentional act) was inconsistent with the defense's argument that the killing was unintentional or accidental. Second, the circuit court ruled, the record was, as a matter of law, insufficient to raise the issue of whether the defendant reasonably acted in defense of others, because Eunice, the person being defended, was out of danger at the time the stabbing occurred.

---

[5]The witness, the defendant's nephew, testified as follows:

Q. Now, at the time of the knifing Donald [Price] had ahold of Eunice, didn't he, had her by the arm still?
A. It was something like that, yeah.
Q. Okay. So at the time just before the knifing Donald had ahold of Eunice, right?
A. Yes.
Q. Patrick [the defendant] came with the knife, right?
A. Yes.
Q. Just then Eunice broke free, didn't she?
A. Um-hum, yes.
Q. She got away. Donald saw Patrick coming, Eunice broke free, and Donald got in a fighting stance, right?
A. Yes.
. . .
Q. So Eunice had just broke free. Donald was getting ready to swing at him. He had seen Donald [sic], right? Excuse me. He had seen Patrick. Donald had seen Patrick and Donald was getting ready to hit Patrick. Patrick could have been holding a knife like this, right?
A. Um-hum.
Q. Yes?
A. Yes.

The state concedes, and we agree, that the circuit court's first reason for refusing to give the instruction is erroneous. In 1987 this court held that a defendant's testimony that the act that caused a death was unintended does not necessarily preclude an instruction on the privilege of self-defense. *State v. Gomaz*, 141 Wis. 2d 302, 311, 414 N.W.2d 626 (1987).

The state further argues, however, that the circuit court's second reason for refusing to give the instruction is correct, because the person whom the defendant assertedly was defending was out of danger when the stabbing occurred.

The privilege of defense of others is set forth in sec. 939.48(1) and (4), Stats.[6] The statute provides that an actor is privileged to defend a third person from real or apparent unlawful interference by another under the same conditions and by the same means as

---

[6]Secs. 939.48(1) and (4), Stats. 1985–86, provide as follows:

(1) A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what he reasonably believes to be an unlawful interference with his person by such other person. The actor may intentionally use only such force or threat thereof as he reasonably believes is necessary to prevent or terminate the interference. He may not intentionally use force which is intended or likely to cause death or great bodily harm unless he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself . . . .

(4) A person is privileged to defend a third person from real or apparent unlawful interference by another under the same conditions and by the same means as those under and by which he is privileged to defend himself from real or apparent unlawful interference, provided that he reasonably believes that the facts are such that the third person would be privileged to act in self-defense and that his intervention is necessary for the protection of the third person.

he is privileged to defend himself from real or apparent unlawful interference. The statute further states that the actor must reasonably believe that the facts are such that the third person would be privileged to act in self-defense and that the actor's intervention is necessary for the protection of the third person.[7] The actor may intentionally use only such force or threat of force as he or she reasonably believes is necessary to prevent or terminate the interference. Before force which is likely to cause death or great bodily harm can be used, the actor must reasonably believe that such force is necessary to prevent imminent death or great bodily harm to the third person.

The key question is whether, when Price was stabbed, the defendant reasonably believed that his sister faced imminent death or great bodily harm or whether, instead, the threat of imminent death or great bodily harm to the defendant's sister had passed by the time of the stabbing. *See, Thomas v. State,* 53 Wis. 2d 483, 488, 192 N.W.2d 864 (1972).

---

[7]The 1953 Report of Wisconsin Legislative Council, vol. V, p. 46, comments on sec. 939.48(4) and the question of reasonableness and real or apparent unlawful interference as follows:

> Under subsection (4) a person has the same privilege to act in defense of another person as he has to act in his own defense. In fact, the privilege to act in defense of another actually is broader than the privilege that such person has to act in defense of himself, for one is entitled to act on reasonable appearances. Thus if A reasonably believes that B is unlawfully attacking C, that C is not guilty of provoking the attack, and that his intervention is necessary to protect C, he may defend C without incurring criminal liability for reasonable force used against B even though B was merely pretending to attack C or even though C had provoked the attack and had thereby no privilege to act in his own defense.

This court has recognized that the determination of reasonableness is "peculiarly within the province of the jury." *State v. Mendoza,* 80 Wis. 2d 122, 156, 258 N.W.2d 260 (1977). The question for the court is not what the totality of the evidence reveals. Rather, this court must ask only "whether a reasonable construction of the evidence ... 'viewed in the most favorable light it will "reasonably admit of from the standpoint of the accused"'" will support the defendant's theory that he reasonably believed that his sister faced great bodily harm. *Mendoza, supra,* 80 Wis. 2d at 153, quoting *Ross v. State,* 61 Wis. 2d 160, 211 N.W.2d 827 (1973). If this court answers this question in the affirmative, then we must conclude that the circuit court erred.

In determining the reasonableness of the defendant's belief that Eunice was faced with imminent death or great bodily harm, we must consider the personal characteristics and histories of the parties. The defendant had confronted Price on previous occasions and knew Price was violent. The defendant was 17 years old, while Price was 38, well-muscled and at least half a foot taller than the defendant.

The question of the reasonableness of the defendant's belief in this case also depends on whether the events were continuous.

The record is not clear about the time that elapsed between Eunice's breaking away and the stabbing. In his first statement on direct examination, quoted at p. 811 above, the defendant's testimony could be interpreted as meaning that "about two minutes" elapsed between the first swing and the stabbing. During the two minutes, the defendant testified, he asked Price to release Eunice, Eunice broke away

from Price, Price swung his fist at the defendant and the stabbing occurred.

The defendant also testified that "when my sister broke free, when I had the knife like this, he just swung at me, and it just happened so fast, and he just fell on his back." This "so fast" comment appears to refer to the time between Eunice's breaking free and the stabbing.

On cross-examination, the defendant testified:

Q: And then you stood there you say for two minutes, is that correct?

A: Minute or so, yes I did.

Q: A minute or so. So he was standing facing you for a minute or so.

A: No, he was—he had my sister by that time. When I swung the knife, she broke free from him, and he started walking towards me and swung at me.

And,

Q: And it's your statement today that how many minutes passed before the stabbing occurred after she left?

A: Approximately about one or two minutes.

The testimony of another witness was that Eunice broke away "just before the knifing."

The testimony about an important factual issue— the length of time that elapsed between Eunice's breaking away and the stabbing—is subject to more than one interpretation.

The state maintains that the record shows that Eunice had retreated from the scene and was "safely ensconced in the family home" at the time of the stabbing. Her breaking away from Price's grasp was, according to the state, a "critical break in the action that materially affected the defendant's right to resort

to deadly force." (State's brief at 8–9) The state argues that the one- or two-minute gap between Eunice's breaking away and the stabbing gave the defendant a reasonable opportunity to recognize that the situation had changed and to modify his conduct.

The state's interpretation of the testimony is reasonable and is one that a jury could adopt. It is not, however, the only reasonable view of the evidence.

On the basis of the defendant's different answers to separate questions, we conclude, examining the evidence in the light most favorable to the defendant, as we are required to do, that the jury could reasonably have concluded that the defendant was confused by the questioning, that the defendant had a poor concept of how long a minute is, or that his perception of time was affected by the trauma of the events. The jury could reasonably conclude from the testimony that moments—that is, minute portions of time—not minutes, had elapsed between Eunice's breaking away and the stabbing.

Upon examination of the record in the light most favorable to the defendant, as we are required to do, we conclude, as did the court of appeals, that a jury could decide that the defendant reasonably believed that his actions were necessary to protect his sister Eunice from imminent death or great bodily harm. We agree with the court of appeals that "Jones' testimony allows the inference that Price had turned his aggression toward Jones and that the time span between Eunice's escape and the stabbing was minimal, making the entire incident a continuous act."

This is one version of the facts the jury could have believed. A jury could, but need not, have concluded

from the testimony that the defendant reasonably believed his actions were necessary to protect Eunice from imminent death or great bodily harm. Accordingly we affirm the decision of the court of appeals.

The state's brief correctly notes that the statutory "defense of others" privilege is a narrow one. While sec. 939.48(1) and (4), Stats., recognizes that a person may defend another with force likely to cause death or great bodily harm, the statute limits this privilege. The law does not authorize the use of deadly force except in limited situations. The words of the statute confine the privilege of defense of others to a narrow range of circumstances. The decision of this court does not broaden the scope of the statutory privilege. We decide only that a jury in this case could determine that the facts of this case satisfy the stringent test set forth in the statute. Therefore the circuit court should have given the jury the defense of others instruction.

Upon examination of the evidence in the light most favorable to the defendant, as we are required to do, we hold that the defendant, under the facts of this case, was entitled to the defense of others jury instruction. For the reasons set forth, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

CALLOW, J. (dissenting). I would reverse the decision of the court of appeals and hold that the circuit court properly refused to instruct the jury on the "defense of others" privilege outlined in secs. 939.48(1) and (4), Stats.

Sections 939.48(1) and (4), Stats., set forth a very limited privilege under which a person is legally

justified in using force which is intended or likely to cause death to another. It is narrowly tailored to give maximum protection to human life. One may not use deadly force simply because one's life has been threatened sometime in the past or because it may be threatened at some undetermined time in the future. Deadly force may be used only to prevent *imminent* death or great bodily harm to oneself or to a third person.

Although the majority agrees that this privilege is limited and insists that it has not broadened the scope of the privilege, it has in fact done so in this case by effectively removing the *imminent* requirement. Under no reading of the record in this case can I conclude that Patrick Jones reasonably believed that he stabbed Donald Price in order to protect his sister Eunice from *imminent* death or great bodily harm.

According to Eunice's testimony she had gone inside the house and was there when the stabbing occurred. When Patrick was asked about Eunice's testimony the following exchange occurred:

Q. Mr. Jones, you heard your sister testify that she was not out there when you—when the stabbing occurred, didn't you?

A. Yes.

Q. Are you saying she's lying?

A. No, I'm not saying she's lying.

Q. Well, who would know best whether or not she was out there when the stabbing occurred? Wouldn't she know best?

A. I guess she would.

Q. And she said in no uncertain terms that she had gone in the house to take care of herself at the time the stabbing happened.

A. About the time I came out the back door with the knife, she—they was—he had her by her arm, twisting her arm. She had broke free and then that's when I guess she left—turned around and went in the house at the time.

Q. So she was gone?

A. Yes.

Q. When the stabbing occurred?

A. Right, she had left. I don't know where she went.

Q. And it's your statement today that how many minutes passed before the stabbing occurred after she left?

A. Approximately about one or two minutes.

Thus, Patrick testified that Eunice had been gone one to two minutes before the stabbing occurred. While Eunice may have been in imminent danger when Patrick arrived with the knife, this clearly demonstrates that Eunice's life was no longer in imminent danger at the time of the stabbing. Her departure created a significant change of circumstances which removed Patrick from protection under the "defense of others" privilege.

The majority, however, speculates that perhaps Patrick did not mean to state that Eunice had been gone a full one or two minutes; instead, he merely meant to say that she had been gone a short time. Majority opinion at page 818. The majority points to other statements in his testimony in which he attempts to show how quickly the whole event happened. Majority

opinion at page 817. Even if this contention is true, it would not change the fact that Patrick could not have reasonably believed he was protecting the absent Eunice from *imminent* death or great bodily harm.

Although Patrick did not know that Eunice was in the house at the time of the stabbing, his testimony reveals that he knew she was no longer in harm's way. Patrick declared that Eunice was gone from the scene. Although he did not know precisely where she was, he knew "she had left" the scene and was gone from the imminent threat of danger.

When faced with a similar situation, this court in *Thomas v. State,* 53 Wis. 2d 483, 488 (1972), held that the Milwaukee County circuit court properly refused to instruct the jury on the "defense of others" privilege when the deadly force was used allegedly to protect a woman who had broken away from her assailant and had actually left the presence of the assailant before he was shot. The court held:

> At the time of the shooting, Thomas [the defendant] was not defending Pat Bardwell nor was she under any threatened harm of imminent death or great bodily harm. She was not in danger of any harm. She had already left the lower flat and was out of the presence of Officer Chiaverotti [the alleged assailant] who was unarmed. Thomas could not have reasonably believed he was then defending her.

*Id.*

Following the reasoning set forth in *Thomas,* Patrick could not have reasonably believed he was defending Eunice from *imminent* death or great bodily harm. Eunice had left the scene. The uncontroverted evidence is that Eunice was gone when the stabbing

occurred whether or not Patrick meant the same thing by the words "so fast" and "one or two minutes." Thus, the circuit court properly refused to instruct the jury on the defense of others privilege.

In conclusion, I note the defendant does not pursue the self-defense argument in this court, but only requests the court to review the record concerning the "defense of others" privilege.

I would reverse the decision of the court of appeals.

I am authorized to state that JUSTICES DONALD W. STEINMETZ and LOUIS J. CECI join in this dissenting opinion.