STATE of Wisconsin, Plaintiff-Respondent,

v.

John F. GIMINSKI, Defendant-Appellant.†

Court of Appeals

*No. 00–3073–CR. Submitted on briefs July 6, 2001.—Decided August 21, 2001.*

2001 WI App 211

(Also reported in 634 N.W.2d 604.)

† Petition to review denied 11-27-01.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Edward John Hunt* of *Hunt Law Group*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David J. Becker*, assistant attorney general.

Before Fine, Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. John F. Giminski appeals from the judgment of conviction for attempted first-degree intentional homicide, and possession of a firearm by a felon, following a jury trial, and from the order denying his motion for postconviction relief. He argues that the trial court erred in denying his request that the jury be instructed on the privilege of acting in defense of others. We conclude, however, that Giminski could not have reasonably believed that his actions, in defense of his daughter, were necessary to terminate what he may have deemed to be improper conduct of a federal agent. Accordingly, we affirm.

## I. BACKGROUND

¶ 2. Although the trial testimony provided several different accounts of the events, the essential facts relevant to resolution of this appeal, including certain disputed facts viewed most favorably to Giminski, are relatively clear. On the afternoon of July 30, 1999, United States Secret Service Special Agents Edward J. Rooney (with whom Giminski had had numerous contacts since 1997), John A. Hirt, and Rick Pearson came to Giminski's residence. Agent Rooney informed Giminski that they were there to seize two vehicles in his possession—a Jaguar XJ6 and a Pontiac Trans Sport minivan. Giminski telephoned his attorney, who advised that he should surrender the vehicles if Rooney had a search warrant for them. Agent Rooney showed Giminski the search warrant, and the agents then accompanied Giminski to the garage, where the Jaguar was parked.

¶ 3. Giminski testified that Agent Rooney told his daughters, Elva and Ava, to remove the family's belongings from the Jaguar.[2] After the daughters removed the belongings, Giminski, his ex-wife, Hermelinda, and their daughters returned to Giminski's residence. Elva, the older daughter, was getting ready to go see her boyfriend. Giminski testified, however, that it "didn't register" with him that "she would be going into the vehicle" the agents were seizing. When Elva attempted to drive off in the van, Agent Rooney pursued her in his vehicle with its siren on, drove into her path, and collided with the van on the street.

¶ 4. Giminski testified that the next thing he recalled was Ava screaming from the living room, "He's

---

[2] Giminski testified that only the Jaguar was in the garage. The testimony of several witnesses differed on whether the agents or Giminski directed Elva and Ava to remove belongings from both vehicles, or only from the Jaguar.

going to kill my sister; he's going to kill my sister; they got a gun to her head." Giminski said he ran to the window and observed Agent Hirt "pulling Elva out of the front seat of the car head first" with a gun "about two inches from her nose." Giminski and Hermelinda then ran to Hermelinda's residence, directly below Giminski's, to get her gun. Giminski told Hermelinda and her roommate, Angelina, to call 9-1-1 and ask the police to come immediately.

¶ 5. Giminski testified that he then left the house, walked behind the van, and observed Elva's "head on the driver's side in [Agent Rooney's] car on the back seat" and Agent Hirt "in the car with his feet sticking out" while he was "doing something" with Elva. Giminski approached Hirt, pointing the gun at him and saying, "Get that gun away from my daughter and . . . get away from her now." Hirt lunged at him and grabbed the gun, and the gun discharged. In the course of the ensuing struggle, the gun discharged several more times, with bullets striking both Hirt and Giminski.

¶ 6. Giminski testified that he did not intend to shoot Agent Hirt, that he did not intend to kill anyone, that his "only mission" was to "extricate" his daughter, that he felt Elva "was in mortal danger," and that he seriously believed Agent Hirt was going to "assassinate" her. Elva, Ava, Hermelinda, and Angelina also testified for the defense. Although their versions differed in some respects—from each other's and from Giminski's—their testimony corroborated the essential aspects of Giminski's account of the facts relating to the issue on appeal.[3]

---

[3] The State's witnesses disputed the defense witnesses' accounts in many ways, but as the State acknowledges:

¶ 7. The defense requested WIS JI—CRIMINAL 830,[4] to inform the jury of Giminski's privilege to use force in defense of others. Denying the request, the trial court explained:

For present purposes, however, the testimony of Hirt and the other state's witnesses in that regard is irrelevant. The evidence must be viewed in the most favorable light possible from the standpoint of the defendant, and that means that his testimony, even if contradicted by that of other witnesses, must be credited for the limited purpose of determining whether he was entitled to an instruction on defense of others.

[4] Wisconsin JI—Criminal 830 provides:

Defense of others is an issue in this case. The law of defense of others allows a person to threaten or intentionally use force to defend another under certain circumstances.

The state must prove by evidence which satisfies you beyond a reasonable doubt that the defendant was not acting lawfully in defense of others.

The law allows the defendant to act in defense of others only if the defendant believed that there was an actual or imminent unlawful interference with the person of (name of third person), believed that (name of third person) was entitled to use or to threaten to use force in self-defense, and believed that the amount of force used or threatened by the defendant was necessary for the protection of (name of third person). The defendant may intentionally use or threaten force which is intended or likely to cause death or great bodily harm only if he believed that such force was necessary to prevent imminent death or great bodily harm to (name of third person).

In addition, the defendant's beliefs must have been reasonable. A belief may be reasonable, even though mistaken. In determining whether the defendant's beliefs were reasonable[,] the standard is what a person of Cordinary intelligence and prudence would have believed in the defendant's position under the circumstances that existed at the time of the alleged offense. The reasonableness of the defendant's beliefs must be determined from the standpoint of the defendant at the time of his acts and not from the viewpoint of the jury now.

It seems to me impossible to conclude that the manner in which [Giminski] acted could be said to be objectively reasonable. I can think of no scenario in which a prudent person would have acted as Mr. Giminski did, and I think any objective standard, any objective assessment of the facts, even including his mistaken belief . . . that the agent had a gun to his [daughter's] head, I think that any prudent person would conclude that to go out in that scene and to point a gun at the Secret Service agent was going to do nothing but further endanger his daughter and increase the volatility of the situation, and, therefore, I do not believe that the instruction is applicable, and I will not give it.

The postconviction court confirmed the trial court's decision. Giminski now renews his challenge.

## II. DISCUSSION

¶ 8. Giminski argues that he was entitled to the defense-of-others instruction because his theory of defense was grounded in the legal principles the instruction declares. Citing *United States v. Lehman*, 468 F.2d 93 (7th Cir. 1972), he reminds us that an instruction regarding a theory of defense ordinarily is required where there is " 'any foundation in the evidence, even

---

[IF THERE IS EVIDENCE THAT THE THIRD PERSON PROVOKED THE ATTACK, ADD APPROPRIATE INSTRUCTION HERE – SEE WIS JI-CRIMINAL 835].

If you are satisfied beyond a reasonable doubt that [SUMMARIZE THE ELEMENTS OF THE CRIME BY REFERRING TO THE RELEVANT INSTRUCTION, THEN CONTINUE WITH THE FOLLOWING] and that the defendant did not act lawfully in defense of others, you should find the defendant guilty.

If you are not so satisfied, you must find the defendant not guilty.

though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility.' " *Id.* at 108 (citation omitted). He emphasizes that, in determining whether the instruction was supported by sufficient evidence, we must not, in the words of *State v. Mendoza,* 80 Wis. 2d 122, 152, 258 N.W.2d 260 (1977), "weigh the evidence" or "look to the 'totality' of the evidence . . . in determining whether the instruction was warranted." Rather, he accurately asserts, we must view the evidence in the light most favorable to him and the giving of the instruction. *See State v. Jones,* 147 Wis. 2d 806, 809, 434 N.W.2d 380 (1989).

■

¶ 9. Thus, Giminski maintains that the trial court's decision "was an invasion of the province of the jury's function because, in coming to its decision, the trial court improperly weighed the evidence, rather than consider the evidence from [his] viewpoint . . . and in the light most favorable to [his] viewpoint." Viewing the evidence as Giminski properly requests, we conclude that the trial court correctly rejected the request for the instruction.

■

¶ 10. The supreme court has explained:

A circuit court has broad discretion in deciding whether to give a requested jury instruction. However, a circuit court must exercise its discretion in order "to fully and fairly inform the jury of the rules of law applicable to the case and to assist the jury in making a reasonable analysis of the evidence." In addition, a criminal defendant is entitled to a jury instruction on a theory of defense if: (1) the defense relates to a legal theory of a defense, as opposed to an interpretation of evidence; (2) the request is timely made; (3) the defense is not adequately covered by other instructions; and (4) the defense is supported by sufficient evidence.

757

*State v. Coleman*, 206 Wis. 2d 199, 212–13, 556 N.W.2d 701 (1996) (citations omitted). Evidence to support the instruction is sufficient if "a reasonable construction of the evidence will support the defendant's theory 'viewed in the most favorable light it will reasonably admit of from the standpoint of the accused.' " *Mendoza*, 80 Wis. 2d at 153 (citation omitted).

■

¶ 11. To support a requested jury instruction on a statutory defense to criminal liability, the defendant "has the initial burden of producing evidence to establish [that] statutory defense." *State v. Stoehr*, 134 Wis. 2d 66, 87, 396 N.W.2d 177 (1986). That burden may be satisfied, however, from evidence adduced by either the prosecution or the defense. *Coleman*, 206 Wis. 2d at 214. As the supreme court explained, the "[u]ltimate resolution of the issue" of whether to give a requested theory-of-defense instruction, based on a statutory defense, " 'turns on a case-by-case review of the evidence, with each case necessarily standing on its own factual ground.' " *Stoehr*, 134 Wis. 2d at 87 (quoting *Johnson v. State*, 85 Wis. 2d 22, 28, 270 N.W.2d 153 (1978)). Whether the evidence, viewed in the light most favorable to the defendant and the instruction, establishes a sufficient basis for the instruction presents a question of law, which we review *de novo*. *See State v. Dundon*, 226 Wis. 2d 654, 662, 594 N.W.2d 780 (1999).

¶ 12. WISCONSIN STAT. § 939.48(4) (1999–2000)[5] defines the privilege of defense of others:

> A person is privileged to defend a third person from real or apparent unlawful interference by another under the same conditions and by the same means as

---

[5] All references to the Wisconsin Statutes are to the 1999–2000 version.

those under and by which the person is privileged to defend himself or herself from real or apparent unlawful interference, provided that the person reasonably believes that the facts are such that the third person would be privileged to act in self-defense and that the person's intervention is necessary for the protection of the third person.

Because a defendant asserting the privilege of defense of others is constrained by the principles governing the privilege of self-defense, those principles apply to the analysis of whether a defense-of-others instruction is required. *See Jones*, 147 Wis. 2d at 814–15. WISCONSIN STAT. § 939.48(1) defines the privilege of self-defense:

A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person. The actor may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference. The actor may not intentionally use force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.

██

¶ 13. Thus, the privilege of defense of others, like the privilege of self-defense, has two components, both of which must be satisfied by a defendant claiming the privilege: (1) subjective—the defendant must have actually believed he or she was acting to prevent or terminate an unlawful interference; and (2) objective—the belief must be reasonable. *See Jones*, 147 Wis. 2d at 814–15.

¶ 14. Giminski concentrates his arguments on those portions of the jury instruction explaining the subjective component—that the law allows for the defense of others if a defendant "believed that there was an actual or imminent unlawful interference" even if the belief was "mistaken." *See* Wis JI—Criminal 830. The State, however, while maintaining that "the matter [of Giminski's belief] is not entirely free from doubt," concedes "at least for the sake of argument, that [Giminski] did, as a subjective matter, actually entertain the beliefs necessary to establish the privilege of defense of others." Thus, the State concentrates on the objective component, emphasizing that Giminski would have had to have *reasonably* believed that his actions were necessary to terminate an *unlawful* interference. *See id.* The State astutely argues that even viewing the circumstances from Giminski's perspective would not allow for any *reasonable* belief that Agent Hirt's actions were unlawful, or any *reasonable* belief that Agent Hirt was going to do anything from which Elva needed protection. The State is correct.

¶ 15. Wisconsin JI—Criminal 830 states the standards for determining the objective component—whether a defendant's beliefs were "reasonable":

> In determining whether the defendant's beliefs were reasonable[,] the standard is what a person of ordinary intelligence and prudence would have believed in the defendant's position under the circumstances that existed at the time of the alleged offense. The reasonableness of the defendant's beliefs must be determined from the standpoint of the defendant at the time of his acts and not from the viewpoint of the jury now.

*See State v. Kanzelberger*, 28 Wis. 2d 652, 660, 137 N.W.2d 419 (1965) (approving language used in jury instruction given on self-defense, which utilized stan-

dard of "what a person of ordinary intelligence and prudence would have done in the position of the defendant under the circumstances existing at the time of the alleged offense").

¶ 16. Even sliding inside Giminski's shoes, and even allowing for a father's extraordinarily strong urge to protect his child, we see absolutely nothing that established a basis for any *reasonable* belief justifying Giminski's conduct. He knew the lawfulness of the agents' seizure of the van. He knew that anything Elva might have been doing in attempting to drive that van away would have constituted *her* unlawful interference with the seizure. He knew, therefore, that Agent Hirt was lawfully entitled to prevent Elva from driving off in the van. And he could not have reasonably believed that Agent Hirt, in front of witnesses in a residential neighborhood, in the broad daylight of a summer afternoon, had any incentive to harm Elva or do anything more than necessary to prevent her from taking the van.

¶ 17. Thus, as the State emphasizes, even according to *Giminski's* account, Giminski was aware that Agent Hirt was a federal agent executing a warrant and that Elva was acting in violation of his authority to seize the van, and, therefore, even if Agent Hirt was holding a gun to Elva's head, Giminski could not have reasonably believed that Agent Hirt would have escalated his conduct from pointing the gun to pulling its trigger. Indeed, as the developments in this case confirmed, the citizen who *unreasonably* interferes with an agent's effort to prevent a third party's interference with the execution of a warrant, not the agent, often is the one who endangers all involved.[6]

---

[6] And, as the State points out, Giminski testified that by the time he got to Agent Hirt, he no longer saw Hirt pointing a gun

¶ 18. Although no Wisconsin court has directly addressed the propriety of Wis JI—Criminal 830 under circumstances like these, the State's arguments find some support in *State v. Hobson*, 218 Wis. 2d 350, 353, 577 N.W.2d 825 (1998), where the supreme court abro-

at his daughter. And, we note, Elva testified that by the time she first heard her father yelling at Agent Hirt, she already was handcuffed in the rear seat of Agent Rooney's vehicle, and Agent Hirt had exited the vehicle and walked toward the rear of it. (Then, Elva testified, when she saw her father approaching with a gun, Agent Hirt grabbed her father's wrist and the gun discharged.)

On appeal, Giminski never precisely identifies the conduct of Agent Hirt that justified his actions in defense of Elva. The State, however, offers a thoughtful analysis based on its reasonable assumption that Giminski must be focusing on Hirt's pointing of his gun at Elva. The State explains:

> In short, Hirt's attempt to arrest Elva, in itself, provided no basis for believing that Hirt was unlawfully interfering with her person. And the defendant does not appear to suggest otherwise.
>
> Rather, if an unlawful interference is to be found here, it must be found in Hirt's pointing a gun at Elva. As the Wisconsin Supreme Court has recognized, "there are circumstances where a police officer's use of force [in making an arrest] is unlawful." *State v. Mendoza*, 80 Wis. 2d 122, 154, 258 N.W.2d 260 (1977). Force in making an arrest becomes unlawful, and gives rise to the privilege of self-defense, if the arresting officer "employs excessive force." *State v. Reinwand*, 147 Wis. 2d 192, 201, 433 N.W.2d 27 (Ct. App. 19[8]8). The question whether Hirt's pointing a gun at Elva constituted an unlawful interference with her person thus turns on whether it constituted the employment of excessive force.
>
> It did not. As the Seventh Circuit Court of Appeals explicitly recognized in *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989),
>
> > [w]here the officer merely points a gun at a suspect in the course of arresting him, the suspect would have no basis for claiming that he had been seized with excessive force. . . .

gated the common-law privilege to "forcibly resist an unlawful arrest in the absence of unreasonable force." The State's arguments also are grounded in solid reasoning, as articulated in *United States v. Branch*, 91 F.3d 699, 714 (5th Cir. 1996), where the federal court commented that the general principles governing the law of self-defense and defense of others "must accommodate a citizen's duty to accede to lawful government power and the special protection due federal officials discharging official duties."[7] We agree with the federal court.

¶ 19. Therefore, we conclude that Giminski could not have *reasonably* believed that Elva was suffering "an actual or imminent unlawful interference" at the hands of Agent Hirt, and that Giminski could not have *reasonably* believed that confronting Agent Hirt with a gun was "the amount of force . . . necessary for the protection" of his daughter. *See* Wis JI—Criminal 830. Accordingly, we conclude that the trial court correctly denied Giminski's request for a jury instruction on the privilege of defense of others.[8]

---

[7] Moreover, as the State carefully explains:

[The State] is not suggesting that an officer's pointing of a gun at another individual can never be deemed excessive force. Such a suggestion would be plainly contrary to Wisconsin law. All [the State] is saying is that pointing a gun at a suspect in the course of making a lawful arrest is not excessive force. None of the Wisconsin decisions finding an officer's pointing of a gun at another individual to be excessive force involved an officer making an arrest.

(Citations omitted.)

[8] Giminski also argues for discretionary reversal in the interests of justice, under Wis. Stat. § 752.35, asserting that the real controversy was not fully and fairly tried. His argument, however, is premised on the trial court's failure to give Wis

*By the Court.*—Judgment and order affirmed.

JI—CRIMINAL 830, and the relationship between that instruction and the controversy surrounding his "intent" to kill. Having concluded that Giminski was not entitled to WIS JI—CRIMINAL 830, we also reject Giminski's request for discretionary reversal.