COURT OF APPEALS
DECISION
DATED AND FILED

September 24, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1990-CR**

Cir. Ct. No. **2017CF120**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

RAYMOND R. BARTON,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Vernon County:  DARCY JO ROOD, Judge.  *Affirmed*.

¶1     BLANCHARD, J.[1]   Raymond Barton was found guilty at a jury trial of battery, disorderly conduct, and obstructing an officer.  Barton argues that the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

circuit court erred in declining his request to give the jury the self-defense instruction on the battery and disorderly conduct charges. I reject this argument because there were insufficient facts to support the instruction. Barton also argues that the circuit court improperly denied his request for a mistrial based on the exposure of the jury to unfairly prejudicial testimony. I conclude that the circuit court did not erroneously exercise its discretion in determining that the testimony at issue was not sufficiently prejudicial to warrant a mistrial. Accordingly, I affirm.

¶2 The complaint charged Barton with battery in violation of WIS. STAT. § 940.19(1), disorderly conduct in violation of WIS. STAT. § 947.01(1), and obstructing an officer in violation of WIS. STAT. § 946.41(1). According to the complaint, Barton battered his stepson, E.M., in the house they shared, and then lied about the incident to police.[2]

¶3 For background purposes it is sufficient to note that the following is not in dispute regarding the alleged battery and disorderly conduct. One night, E.M. profanely interrupted an argument between his mother, C.G., and Barton from another room of the house. This led Barton to search the house for E.M. E.M. called out, "I'm right here." Barton found E.M. and repeatedly punched him in the head.

¶4 The basis for the mistrial motion was testimony from a witness called by the State, M.B., a daughter of C.G. and Barton. M.B.'s direct testimony included the following:

---

[2] Barton makes no argument specific to the obstruction conviction.

Q: Okay. So at some point you did go downstairs. And why did you go downstairs?

A: I was afraid something had happened.

Q: You were afraid something had happened? And why do you believe that?

A: Because things had happened before.

I will refer to this exchange as the "'things had happened before' testimony." Immediately following this testimony, Barton requested a mistrial, arguing that the testimony constituted a form of other acts evidence that it was unfairly prejudicial. The circuit court denied the mistrial motion.

¶5    At the close of evidence, Barton requested that the court give the jury the standard self-defense instruction. The circuit court denied the request, apparently agreeing with the State that there was insufficient evidence to support giving it.

¶6    The prosecutor argued to the jury that Barton became enraged at E.M. for interrupting the argument between Barton and C.G. in the manner that he did, and as a result lashed out physically at E.M. The prosecutor further contended that E.M. did not take any aggressive action towards Barton before or as Barton battered him.

¶7    Barton's main argument was that, by using a profanity directed at Barton during an argument with his mother that E.M. knew would provoke Barton, and then shortly thereafter saying, "I'm right here," E.M. effectively threatened Barton, instigated their altercation, and consented to a physical fight with Barton.

¶8      The jury found Barton guilty on all counts.   Barton moved for reconsideration of both the mistrial and self-defense instruction decisions, and the court denied the reconsideration motion.[3]  Barton appeals.

¶9      I first address the self-defense issue.  Barton contends that the circuit court erred in failing to give the jury a self-defense instruction, because there was sufficient evidence that the jury could have found that Barton reasonably believed that there was an actual or imminent unlawful interference with his person and that the amount of force he used or threatened to use was necessary to prevent or terminate the interference.  I disagree.

¶10     The testimony at trial established the following undisputed, relevant facts.  Barton did not testify, but the State called E.M. (victim), C.G. (wife of Barton), and M.B. (daughter of Barton).

¶11     Barton and C.G. were arguing in their downstairs bedroom.  From an adjacent room, E.M. eavesdropped.  At one point, after Barton had just interrupted his wife and spoken over her, E.M. interjected the following:  "Let her fuckin' talk."  E.M. knew that using this profanity would provoke Barton and that he was

---

[3] I reject Barton's arguments on the merits for the reasons explained in the text. However, I note that Barton failed to ensure that a transcript of the hearing regarding his motion for reconsideration was included in the record on appeal.  *See* **Schaidler v. Mercy Med. Ctr. of Oshkosh, Inc.**, 209 Wis. 2d 457, 469, 563 N.W.2d 554 (Ct. App. 1997) ("It is the appellant's responsibility to [e]nsure that the record includes all documents pertinent to the appeal").  Barton includes this transcript in the appendix to his brief, but this is not equivalent to placing the transcript into the record, which is all I can properly consider on review.  *See* **Roy v. St. Lukes Med. Ctr.**, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256 (disregarding materials in appendix that were not included in appellate record).  I remind counsel for Barton that "'when an appellate record is incomplete in connection with an issue raised by the appellant, [I] must assume that the missing material supports the trial court's ruling.'"  **Jensen v. McPherson**, 2004 WI App 145, ¶6 n.4, 275 Wis. 2d 604, 685 N.W.2d 603.

prohibited from using it under "house rules." Barton then ran around the house, which was dark due to lights being off, searching for E.M. He passed E.M. without noticing him and proceeded upstairs. While Barton was either still upstairs or had descended to the first floor, E.M. called out "I'm right here." Barton located and charged at E.M. Barton punched E.M. repeatedly, aiming the blows primarily at his head. Significantly, both E.M. and C.G. testified that E.M. did not throw any punches, nor otherwise attempt to injure or cause pain to Barton either before or during this physical contact.

¶12 E.M. testified to the following. He was standing when the altercation began, and he held his hands up to defend himself. E.M. attempted to place Barton in a bear hug, meaning he wrapped his arms around Barton to restrain him. Barton broke the hold and E.M. collapsed into a chair.

¶13 C.G. testified that she saw Barton "pin [E.M.] to a chair" before beginning to hit him and that she did not see E.M. attempt to put Barton in a bear hug. C.G. also testified that she attempted to separate the men, but when she unable to, she left the room and called the police.

¶14 M.B. testified as follows. Drawn by noise, she came downstairs. She saw E.M. bear hugging Barton. Barton forcefully pushed E.M. into a chair. E.M. was bleeding from a head wound and there was blood on and around the chair into which Barton had pushed E.M. M.B. did not see E.M. attempt to punch or strike Barton.

¶15 At the close of evidence, Barton requested that the circuit court give the jury the pattern self-defense instruction:

Self-defense is an issue in this case. The law of self-defense allows the defendant to threaten or intentionally use force against another only if:

- the defendant believed that there was an actual or imminent unlawful interference with the defendant's person; and

- the defendant believed that the amount of force the defendant used or threatened to use was necessary to prevent or terminate the interference; and

- the defendant's beliefs were reasonable.

WIS JI—CRIMINAL 1220A.

¶16     The State objected, arguing that Barton had failed to make a sufficient showing to warrant the instruction. The circuit court denied Barton's request, later clarifying that the court concluded that the evidence Barton cited did not support giving the instruction. In rejecting the reconsideration motion on the instruction issue the circuit court recognized that the evidentiary threshold for the defense being entitled to a self-defense instruction is low. But the court concluded that, even given the low bar, no reasonable basis existed for Barton to have believed that E.M. unlawfully interfered with Barton's person that night.

¶17     Our supreme court has explained the following regarding the pertinent self-defense standards:

A jury must be instructed on self-defense when a reasonable jury could find that a prudent person in the position of the defendant under the circumstances existing at the time of the incident could believe that he was exercising the privilege of self-defense. A circuit court may deny a requested self-defense instruction when no reasonable basis exists for the defendant's belief that another person was unlawfully interfering with his person and that the defendant used or threatened the use of such force as he reasonably believed necessary to prevent or terminate the interference.

> Wisconsin law establishes a "low bar" that the accused must surmount to be entitled to a jury instruction on the privilege of self-defense. The accused need produce only "some evidence" in support of the privilege of self-defense.
>
> Evidence satisfies the "some evidence" quantum of evidence even if it is "weak, insufficient, inconsistent, or of doubtful credibility" or "slight."

*State v. Stietz* 2017 WI 58, ¶¶15-17, 375 Wis. 2d 572, 895 N.W.2d 796 (citations omitted). A defendant has the right to a self-defense instruction if the evidence viewed in the light most favorable to the defendant supports the instruction. *Id.*, ¶13. The issue whether the evidence provides a sufficient basis for the instruction presents a question of law, which I review de novo. *Id.*, ¶14; *State v. Giminski*, 2001 WI App 211, ¶11, 247 Wis. 2d 750, 634 N.W.2d 604.

¶18    Applying these legal standards, I conclude that there was not a sufficient basis for the instruction here.

¶19    It is important to note from the outset that Barton identifies no evidence that could support a reasonable inference that E.M. took physically aggressive actions toward Barton, or explicitly threatened him with physical harm, at any point prior to Barton charging and striking E.M. This includes the moment when Barton found E.M. in the house and immediately rushed to him and struck him repeatedly. What this leaves is Barton's argument based entirely on E.M.'s profane interjection and his call of "I'm right here." The argument is that these were essentially fighting words that could have led Barton to believe that he was

7

in imminent danger of an unlawful interference with his person.[4] This is not a tenable position.

¶20    Beginning with E.M.'s profane interjection, Barton fails to point to any evidence supporting a reasonable inference that this interjection could have led Barton to believe that there was an imminent threat to his person. It is true that using this profanity was against a "house rule" and was known to anger Barton. Further, a jury could certainly find that interrupting an argument from another room was highly annoying in itself. It is reasonable on these facts for Barton to argue that E.M. intended to provoke an emotional reaction in him. But it is too great a leap to contend that this could have reasonably given rise to a belief by Barton that he was in imminent physical danger. E.M. made the interjection from another room and did not present himself after making it. Barton had to go looking for him. Further, the interjection did not carry any explicit physical threat.

¶21    Adding E.M.'s second statement, "I'm right here," does not meaningfully alter the picture. It is a stretch to argue, as Barton does, that he could reasonably have interpreted "I'm right here," coming shortly after the profane interjection, as an invitation to engage in a mutual fight. But even assuming that much, Barton fails to explain why he could not simply have declined the purported invitation. There is not a reasonable inference that could be drawn from E.M. saying, "I'm right here," that Barton could have had a

_____

[4] Barton also makes reference to E.M. placing him in a bear hug, but trial testimony supports only one reasonable inference:  the bear hug occurred only *after* Barton had inflicted all injuries upon E.M.  Thus, E.M.'s hugging Barton could not be used to establish a reasonable belief that Barton was exercising his right to self-defense when he battered E.M.  In a similar vein, E.M. did place his hands up defensively and tore part of Barton's robe, but only after Barton charged at E.M.

reasonable belief that E.M. planned to attack Barton, requiring Barton to restrain him, much less preemptively attack him. *Cf. Sykes v. State*, 69 Wis. 2d 616, 621-22, 230 N.W.2d 760 (1975) (Sykes did not have a right to a self-defense instruction based on evidence that, after the victim slapped Sykes, he left a tavern to retrieve and load a weapon, and then returned to shoot the victim—this made Sykes "the provoker.").[5]

¶22    In sum on this issue, even assuming all facts in Barton's favor, he cannot point to any moment in the course of relevant events at which that was a reasonable inference that he could have believed that he needed to strike E.M. in the head in order to defend himself.

¶23    Turning to the second issue, Barton contends that the circuit court erred in refusing to grant a mistrial based on the "things had happened before" testimony. Barton argues that this was unfairly prejudicial other acts evidence and that the circuit court misunderstood the law in declining to grant a mistrial. I reject these arguments on the ground that the circuit court made a reasonable discretionary decision, consistent with pertinent legal standards, that M.B.'s testimony was not sufficiently prejudicial to require a new trial.

¶24    The decision to grant a mistrial lies within the discretion of the circuit court. *See State v. Doss*, 2008 WI 93, ¶¶65, 69, 312 Wis. 2d 570, 754 N.W.2d 150. The level of deference given to this decision "depends on the reason

---

[5] *See also* WIS. STAT. § 939.48(2)(a) ("A person who engages in unlawful conduct of a type likely to provoke others to attack him or her and thereby does provoke an attack is not entitled to claim the privilege of self-defense against such attack, except when the attack which ensues is of a type causing the person engaging in the unlawful conduct to reasonably believe that he or she is in imminent danger of death or great bodily harm.").

for the request." ***State v Bunch***, 191 Wis. 2d 501, 507, 529 N.W.2d 923 (Ct. App. 1995). Here, because Barton has not argued that the "things had happened before" testimony was the result of "overreaching or laxness" by the prosecutor, I give "great deference" to the circuit court's ruling on the defendant's motion for mistrial.[6] *See **id**.*

¶25 "To sustain a discretionary ruling, [I] need only find that the trial court examined the relevant facts, applied a proper standard of law and, using a rational process, reached a reasonable conclusion." ***State v. Ross***, 2003 WI App 27, ¶35, 260 Wis. 2d 291, 659 N.W.2d 122. The circuit court must determine in light of the proceedings as a whole if the claimed error was sufficiently prejudicial to require a new trial. ***Doss***, 312 Wis. 2d 570, ¶69.

¶26 To repeat, Barton immediately moved for a mistrial following the "things have happened before" testimony, on the ground that the testimony constituted a form of other acts evidence that was irrelevant and prejudicial to Barton. However, Barton did not move to have the testimony stricken, and did not request a limiting instruction that the jury disregard the testimony. Further, Barton does not direct me to any point in the trial at which the State attempted to use the "things have happened before" testimony. Thus, as far as the jury was concerned, there was no comment on this brief testimony by the court or counsel.

---

[6] The prosecutor explained at trial, in response to Barton's mistrial motion, that all of the State's witnesses had been instructed before giving testimony that they were not to testify regarding past acts of Barton. Further, the State did not seek to retroactively justify the statement's admission on any basis. In his reply brief, Barton concedes that I should apply "great deference" to the court's decision here.

¶27    The circuit court denied the mistrial motion, stating that Barton had failed to object to earlier introduced evidence that had referenced "things … in the past," and therefore Barton had forfeited any objection to such a reference. The court also determined that the testimony was not "so prejudicial that it affects Mr. Barton's right to a fair trial."[7]

¶28    In addressing the motion for reconsideration on this issue, the circuit court found that the "things have happened before" testimony was a "nothing statement" that did not present "an other acts type situation." The court stated that this "nothing statement" could not reasonably have affected the jury's decisions. In expressing this last idea the court alluded to the concept that it would have been only "harmless error" for the court to have allowed the admission of this testimony, even though Barton did not request at trial that the testimony be stricken or that the jury be instructed to disregard it.

¶29    On appeal, Barton asserts that this testimony invited the jury to attribute to Barton a violent character instead of deciding the case based strictly on the evidence and pertinent legal standards. Barton appears to argue that the circuit court erroneously exercised its discretion when declining to grant a mistrial in three ways: (1) determining that a previous instance of similarly prejudicial evidence had been adduced at trial and went unobjected to by Barton; (2) concluding that the jury's exposure to this testimony could only have

---

[7] The court asked defense counsel if he was moving for an order barring similar testimony. Counsel answered yes and made this motion, which the court granted. Thus, aside from the mistrial motion, the court granted the only relief requested by the defense related to the "things have happened before" testimony.

11

constituted "harmless error" and that no *Sullivan*[8] analysis was required to determine whether the testimony was admissible; and (3) failing to more broadly apply the legal standards applicable to mistrial motions. I address these arguments in turn.

¶30 Barton argues that, at the time of his motion for a mistrial, the circuit court incorrectly asserted that E.M. had provided similar, prejudicial testimony to which Barton had failed to object. Barton contends that, as a result, the court's "factual groundwork" for its ruling denying Barton's mistrial motion was "faulty."

¶31 In responding to the initial mistrial request, the circuit court made the comment that E.M. had provided "unobjected evidence" that the court apparently understood to resemble the "things have happened before" testimony. As Barton acknowledges, the court likely had in mind the following. While being cross examined by defense counsel, E.M. testified that there had been tension between him and Barton due to E.M.'s use of alcohol and being unemployed. I interpret the court to have meant that the "things have happened before" testimony was logically related to this prior, unobjected to testimony by E.M. about tension in the household. Barton fails to explain why the court could not reasonably have taken into account the prior testimony by E.M. when considering Barton's objection to M.B.'s "things have happened before" testimony. Further, stepping back, Barton more generally fails to explain how the court's consideration of

---

[8] *See **State v. Sullivan***, 216 Wis. 2d 768, 72-73, 576 N.W.2d 30 (1998) (providing the analytical framework for determining when to admit other acts evidence under WIS. STAT. §§ 904.01, 904.03, and 904.04). Though this framework is inapplicable for the reasons explained in the text, I note that under *Sullivan* the court may admit other acts evidence if the court determines that it: (1) is offered for an acceptable purpose; (2) is relevant and has probative value; and (3) its probative value substantially outweighs the danger of unfair prejudice. ***Id.***

E.M.'s prior testimony regarding tension would have undermined its ultimate conclusion that M.B.'s statement was not so "prejudicial that it affect[ed] Mr. Barton's right to a fair trial."

¶32 Turning to the harmless error argument, Barton argues that the circuit court's statement that the State's apparently inadvertent eliciting of the "things have happened before" testimony at most constituted "harmless error" is erroneous, and that this somehow undermines the court's mistrial ruling. In effect, Barton disagrees with the circuit court that it is clear beyond a reasonable doubt that the "things have happened before" testimony did not contribute to his conviction. *See Stietz*, 375 Wis. 2d 572, ¶63. Barton argues that this testimony conveyed to the jury that there had been prior instances of violence within the household attributable to Barton.

¶33 Barton misframes the issue. A harmless error analysis here would presuppose that the court erroneously exercised its discretion in permitting the admission of the "things have happened before" testimony, in denying a motion to strike the testimony, or in rejecting a request to instruct the jury regarding the testimony. *See, e.g.*, ***State v. Sullivan***, 216 Wis. 2d 768, 778-79, 792-95, 576 N.W.2d 30 (1998) (addressing whether erroneously admission of other acts testimony, based on a pretrial motion, constituted harmless error). But as noted, the State did not move for the testimony's admission and Barton did not move to strike or request a curative instruction.[9] Rather, the only question Barton raised at

---

[9] For these reasons, Barton similarly misframes the issue by further arguing that the circuit court erred when it declined to undertake a *Sullivan* review. This is because a *Sullivan* analysis is appropriate when evidence of prior acts is submitted to the court for approval or when a party moves to strike it, in contrast to the situation here. *See **State v. Hurley***, 2015 WI 35,

(continued)

trial was whether the testimony, once it came before the jury, was so prejudicial that he was entitled to a mistrial. Even when I reframe Barton's harmless error argument as one of prejudicial effect, applying great deference, I am not persuaded that the circuit court erred in concluding that M.B.'s statement had little if any prejudicial effect.

¶34 M.B. made the unexplained, one-time comment in her testimony that she was "afraid something had happened" because "things have happened before." This was a vague reference that did not explicitly implicate Barton in any particular prior event or type of event. Notably, M.B. did not include any descriptions of what the prior "things" were. More specifically, there is no indication that the "things" included instances of *physical violence* within the household. Further, even if a juror had unreasonably speculated that this was a reference to prior violent acts, M.B. did not necessarily suggest that Barton had been the instigator or offender in any prior act of violence, as opposed to E.M., or for that matter C.G., with whom Barton was arguing on the night at issue.

¶35 Considering the potential for prejudice more broadly, there was ample physical evidence and direct witness testimony that would readily support the jury's verdicts. Next to this evidence, the ambiguous and isolated "things have happened before" testimony was of little potential evidentiary weight.

¶36 While unclear, Barton may mean to make a different argument, but it fares no better. The argument would be that, in ruling on the mistrial motions, the

---

¶¶57-58, 361 Wis. 2d 529, 861 N.W.2d 174 (discussing evidentiary burdens of party *seeking admission* of other acts evidence).

circuit court failed to properly exercise its discretion by failing to invoke applicable legal standards. The circuit court was brief but to the point in expressing its reasoning. I am not persuaded that it did not properly apply the law to the facts. Looking in particular at the court's mid-trial ruling, it stated that it did not believe that the "things have happened before" testimony prejudiced Barton's right to a fair trial. In doing so, the court considered the nature of the brief, vague snippet of the testimony and reasonably placed it in the context of E.M.'s earlier testimony about tension in the household.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.