PER CURIAM.
¶1 Samson J. Gomoll appeals from a judgment of conviction entered after a jury found him guilty of first-degree intentional homicide for the shooting death of his girlfriend, S.S., and from an order denying his motion for postconviction relief. The issue at trial was whether Gomoll was acting in self-defense. Gomoll argues that he was denied effective assistance of counsel, that the circuit court erroneously denied relevant witness testimony, and that the court's denial of his motion for resentencing was an erroneous exercise of discretion. We reject Gomoll's claims and affirm.
¶2 The record reveals that Gomoll and S.S., who were living together, had been having arguments for some time due to Gomoll's failure to find employment. S.S. worked on September 19, 2015, while Gomoll began drinking beer around 12:30 p.m. and spent the day at home watching television. S.S. returned home from work around 8:30 p.m. with a friend, who she brought to serve as a mediator between herself and Gomoll. Gomoll rebuffed her attempt to work on their relationship, and after an argument, S.S. and her friend left. Gomoll continued to drink. Gomoll estimated that between 12:30 p.m. and 1:00 a.m. on September 20 he drank approximately twenty beers.
¶3 S.S. returned home around 1:00 a.m. with another friend, M.G. S.S. asked M.G. to come inside the apartment with her as she "didn't know how [Gomoll] was at that time." S.S. and Gomoll, who were both intoxicated,[1] "began arguing pretty much right off the bat when she got home" about a missing ammunition magazine for his AK-47 rifle, and Gomoll was calling her names like "Crazy [S.S.]" and "Bitch." The State entered evidence of text messages that Gomoll sent to a friend at 1:08 a.m., which read: "My womans [sic] insane" and "I'm going to blow her brains out." S.S. told M.G., "I think I should leave. I don't feel safe," but then changed her mind, telling Gomoll, "I'm not leaving. This is my house." S.S. threatened to call the police, and Gomoll responded: "If you call the cops, I'll kill you." Gomoll then pulled a gun from between the seat cushions of the couch and fired three shots "instantaneous[ly]" into S.S.'s right arm, chest, and back. M.G. testified that S.S. was standing still when Gomoll fired and was not moving toward Gomoll or the bedroom.
¶4 Gomoll claimed he was acting in self-defense. He argued that "two weeks prior to this incident, [S.S.] pulled a gun on [him] and was threatening [him]," and a week prior, S.S. had pushed him down the stairs leaving him "fairly injured" and requiring "x-rays and stuff."[2] Gomoll explained that he had the gun, which was always loaded, in the couch cushions so S.S. "wouldn't know where it was after she was threatening me with it." According to Gomoll, he told S.S. that he "reported" her at the doctor's office for pushing him down the stairs, she responded that he "was fucking done," and then Gomoll fired. He claimed that S.S. was standing near the bedroom where the rest of Gomoll's guns were located, and she appeared to be moving toward the bedroom when he shot her. Gomoll testified that he did not "really remember the shooting of her."
¶5 Gomoll was charged with first-degree intentional homicide. At trial, Gomoll alleged self-defense, telling the jury that he "feared for [his] life." During closing arguments, Gomoll's defense counsel told the jury to acquit Gomoll of first-degree intentional homicide and consider second-degree homicide and Gomoll's "reasonable beliefs."[3] The jury found Gomoll guilty of first-degree intentional homicide, and Gomoll was sentenced to life in prison with the possibility of being released to extended supervision after thirty-two years.
¶6 Gomoll filed a postconviction motion for a new trial or sentence modification. He claimed ineffective assistance of counsel, arguing that counsel was ineffective for (1) seeking Gomoll's acquittal on grounds of self-defense and not asking the jury to convict Gomoll of second-degree intentional homicide, (2) not introducing medical records to corroborate Gomoll's assertion that S.S. had pushed him down the stairs, (3) not arguing more stringently to get V.K.'s testimony introduced, and (4) not introducing evidence about Gomoll's mental health and diabetes. He also sought sentence modification, arguing that the impact that his diabetes had on his mental health was a new factor unknown to the circuit court at sentencing. After a Machner[4] hearing, the circuit court denied the motion, concluding that counsel made reasonable decisions and that Gomoll's diabetes was not a new factor as everyone was aware of it but "no one thought it was an issue." Gomoll appeals.
Ineffective Assistance of Counsel
¶7 We review a claim for ineffective assistance of counsel as a mixed question of fact and law. State v. Thiel , 2003 WI 111, ¶ 21, 264 Wis. 2d 571, 665 N.W.2d 305 ; State v. Erickson , 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). We will uphold the findings of fact of the circuit court unless they are clearly erroneous. Thiel , 264 Wis. 2d 571, ¶ 21. "Findings of fact include 'the circumstances of the case and the counsel's conduct and strategy.' " Id. (citation omitted). The ultimate determination of whether counsel was ineffective is a question we review de novo. Id. , ¶ 21.
¶8 To prevail on a claim for ineffective assistance of counsel, the defendant must demonstrate that counsel's actions or inaction constituted deficient performance and the defendant was prejudiced as a result. Strickland v. Washington , 466 U.S. 668, 687 (1984) ; State v. Love , 2005 WI 116, ¶ 30, 284 Wis. 2d 111, 700 N.W.2d 62. "To prove constitutional deficiency, the defendant must establish that counsel's conduct" fell "below an objective standard of reasonableness." Love , 284 Wis. 2d 111, ¶ 30. The defendant must demonstrate specific acts or omissions that were "outside the wide range of professionally competent assistance." Strickland , 466 U.S. at 690. We presume that counsel's performance was satisfactory. Id. at 689. We review an attorney's performance with a "highly deferential" lens and we review counsel's acts without the distortion of hindsight. State v. Maloney , 2005 WI 74, ¶ 25, 281 Wis. 2d 595, 698 N.W.2d 583. To establish constitutional prejudice, the defendant must show that but for counsel's unprofessional errors a reasonable probability exists that the result of the proceeding would have been different. Strickland , 466 U.S. at 694 ; Love , 284 Wis. 2d 111, ¶ 30.
¶9 First, Gomoll contends that defense counsel performed deficiently, specifically during his closing argument, in pursuing a "perfect self-defense strategy"[5] as "[t]o risk conviction of first-degree intentional homicide by failing to concede guilt of second-degree intentional homicide was inherently reckless and requires a new trial." Gomoll claims that there was "no evidentiary basis for a jury to determine [he] had a reasonable, or objective, belief he was preventing or terminating an unlawful interference by [S.S.]," basically there was no possibility that the jury would ever acquit Gomoll. Defense counsel testified that his strategy was to argue that the jury should acquit Gomoll of first-degree intentional homicide, but to only imply that the jury should convict him of second-degree intentional homicide.[6] He claimed that he did not want to expressly ask the jury to convict on the second-degree charge as "[t]here's always a possibility of getting a not-guilty and having a complete acquittal." Defense counsel testified that Gomoll was aware of this trial strategy and that he "knowingly" adopted it during their nine pretrial meetings.
¶10 We agree with the circuit court that defense counsel provided effective assistance as it pertains to the self-defense strategy. First, and most importantly, defense counsel discussed the trial strategy with Gomoll and he agreed with the course of action. See Strickland , 466 U.S. at 691 (finding reasonableness of counsel's actions may be based on or influenced by defendant's statements or actions). Second, as defense counsel described at the Machner hearing, outright acquittal was possible, although unlikely, given Gomoll's testimony, including allegations of domestic violence by S.S. and his claim that she said he "was fucking done" and then "made a movement towards the bedroom where there were ... weapons." Gomoll testified at trial that he shot S.S. because he feared for his life, and he agreed at the Machner hearing that if he shot S.S. because he feared for his life, then "it justifies an acquittal." Given our "highly deferential" review and the "wide latitude" we give to defense counsel "in deciding how best to represent a client," we cannot conclude that defense counsel's strategy was unreasonable. Yarborough v. Gentry , 540 U.S. 1, 6-7 (2003) ; Maloney , 281 Wis. 2d 595, ¶ 25.
¶11 Next, Gomoll faults defense counsel for failing to corroborate Gomoll's claim that S.S. pushed him down a stairway in two ways: (1) not introducing a certified medical record from the stairway injury, and (2) not arguing more stringently when the court disallowed V.K.'s testimony on hearsay grounds, claiming he should have cited two Wisconsin cases addressing two hearsay exceptions. Defense counsel testified that he obtained the medical record from Gomoll's visit to the hospital, but he did not consider introducing the medical record into evidence as he "thought we could get the evidence in through [Gomoll] and [V.K.]" Further, although postconviction counsel claimed at the Machner hearing that defense counsel "did not argue the hearsay exception," the record reveals that defense counsel did argue hearsay exceptions, specifically "circumstantial guarantees of trustworthiness" and that the testimony was a "statement of recent perception," with counsel citing to WIS. STAT. § 908.045 (2015-16).[7]
¶12 We conclude that defense counsel did not perform deficiently. As the circuit court reviewed and acknowledged, the medical record does not indicate who pushed Gomoll down the stairs, only establishing that he was "pushed down stairs, hit on left shoulder." Defense counsel's decision to not introduce the medical record was reasonable as V.K.'s testimony was the better evidence as she would have testified that S.S. told her she pushed Gomoll down the stairs. The State did not present evidence to dispute that Gomoll was pushed down the stairs, so the only question that remained was who pushed Gomoll. The medical record did not answer that question.
¶13 Defense counsel also did not perform deficiently under Strickland by not arguing additional hearsay exceptions. Gomoll attempts to hold defense counsel to an unrealistic expectation of perfection. However, "[c]ounsel need not be perfect, indeed not even very good, to be constitutionally adequate." Thiel , 264 Wis. 2d 571, ¶ 19 (citation omitted). "We do not look to what would have been ideal, but rather to what amounts to reasonably effective representation." State v. McMahon , 186 Wis. 2d 68, 80, 519 N.W.2d 621 (Ct. App. 1994). Defense counsel not only made an argument for the hearsay exceptions, but the argument was reasonable. Although he may have also made additional arguments, it was not constitutionally required.
¶14 Finally, Gomoll argues that defense counsel was ineffective for failing to present mitigating evidence related to his diabetes both at trial and at sentencing. Gomoll claims investigation into his diabetic history and "recent mental devolution" would have helped explain "why Gomoll's disturbed mental processes caused him to believe [S.S.] was a real threat" and why those same "disturbed mental processes unreasonably caused Gomoll to use excessive force against that threat." At the Machner hearing, defense counsel explained that he and Gomoll had discussed Gomoll's diabetes, even sharing that defense counsel had the same medical diagnosis. Defense counsel testified that, based on his own experience with the illness, he "never considered [Gomoll's] diabetes as a mental issue ... for a defense" as he did not think it "would be a good sell to the jury" to "blame a medical condition for what happened, as an excuse for what happened."
¶15 Counsel's decision to not put evidence relating to Gomoll's diabetes before the jury was a reasonable strategic decision under the circumstances. "Matters of reasonably sound strategy, without the benefit of hindsight, are 'virtually unchallengeable.' " State v. Banks , 2010 WI App 107, ¶ 40, 328 Wis. 2d 766, 790 N.W.2d 526 (quoting Strickland , 466 U.S. at 690-91 ). And, further, "[w]e will not 'second-guess[ ] the trial counsel's considered selection of trial tactics or the exercise of a professional judgment in the face of alternatives that have been weighed by trial counsel.' " State v. Hunt , 2014 WI 102, ¶ 55, 360 Wis. 2d 576, 851 N.W.2d 434 (citation omitted; second alteration in original). Gomoll testified that he shared information about his diabetic condition with defense counsel, but there is no indication in the record that he ever discussed it with counsel in terms of a defense. Further, Gomoll testified at the trial that he drank "probably around 20" beers during the course of the day prior to shooting S.S.; thus, the jury was already aware that his mental state was altered, and it was reasonable trial strategy for defense counsel to not want to alienate the jury with multiple excuses blaming Gomoll's altered mental state. We find no reason to conclude that counsel's strategic decision "fell below an objective standard of reasonableness."[8] Strickland , 466 U.S. at 688.
Circuit Court's Exclusion of V.K.'s Testimony at Trial
¶16 Gomoll also argues that the circuit court's denial of V.K.'s testimony was an erroneous exercise of discretion, and we agree. We conclude, however, that the error was harmless under the circumstances in this case. Generally, evidence of other crimes, wrongs, or acts is inadmissible at trial to prove the character of a person or to demonstrate that they acted similarly. State v. Wenger , 225 Wis. 2d 495, 507, 593 N.W.2d 467 (Ct. App. 1999). One of the exceptions, colloquially known as McMorris evidence, is when self-defense becomes an appropriate issue at trial:
When the issue of self-defense is raised in a prosecution for assault or homicide and there is a factual basis to support such defense, the defendant may, in support of the defense, establish what the defendant believed to be the turbulent and violent character of the victim by proving prior specific instances of violence within his knowledge at the time of the incident.
McMorris v. State , 58 Wis. 2d 144, 152, 205 N.W.2d 559 (1973). "The purpose in allowing such testimony is not to support an inference about the victim's actual conduct during the incident; rather, the testimony relates to the defendant's state of mind, showing what his beliefs were concerning the victim's character," which helps "the jury determine whether the defendant 'acted as a reasonably prudent person would under similar beliefs and circumstances' " in exercising the privilege of self-defense. Werner v. State , 66 Wis. 2d 736, 743, 226 N.W.2d 402 (1975) (citation omitted).
¶17 The State does not dispute that V.K.'s testimony satisfied the exceptions to the general rule against hearsay, but argues that the circuit court properly exercised its discretion to exclude the evidence as it was cumulative. The State cites this court's decision in Wenger , which held that "[w]hen corroborating evidence of the victim's prior specific violent acts is cumulative, our courts have excluded it on grounds that it surpassed the legitimate purpose of establishing what the defendant believed to be the victim's violent character, and instead, demonstrated the victim's violent propensity." Wenger , 225 Wis. 2d at 509 (citing McAllister v. State , 74 Wis. 2d 246, 251, 246 N.W.2d 511 (1976) ). We disagree that the facts in this case warranted that result.
¶18 In McAllister , our supreme court explained that "[a] defendant should not be limited merely to his own assertion that he had knowledge of particular violent acts, but should be allowed to produce supporting evidence to prove the reality of the particular acts of which he claims knowledge, thereby proving reasonableness of his knowledge and apprehension and the credibility of his assertion." McAllister , 74 Wis. 2d at 250-51. There, the defense attempted to introduce hospital records showing that the victim's wife had visited the hospital for a stab wound. Id. at 249. The trial court refused to admit the hospital records, and our supreme court upheld that result, finding that "[t]he accumulation of evidence as to a particular violent act of the victim ... may go beyond the legitimate purpose of establishing what the defendant believed to be the violent character of the victim and reach the point where it is only offered to prove the victim acted in conformity with the prior violent behavior." Id. at 251.
¶19 In McAllister , the defendant testified that he had knowledge of the victim's wife's stab wound and another party testified that he had accompanied the wife to the hospital for the treatment of the stab wound, and, therefore, the addition of the hospital records in conjunction with the other party's testimony would merely be cumulative. Here, however, Gomoll was improperly "limited merely to his own assertion" as he was not allowed to produce V.K.'s supporting testimony. See id. at 250-51. V.K.'s testimony would not have been cumulative to other testimony as there was none; instead, it would have helped prove the "reality" of the stairway incident. See id. Under McAllister , this is exactly what Gomoll "should be allowed to produce." See id. For this reason, we conclude that the circuit court erred in refusing to admit the evidence as it deemed the evidence improper "bolstering" since V.K.'s testimony "would just be adding on what [Gomoll's] already saying and confirming."
¶20 Although the circuit court's exclusion of V.K.'s testimony was erroneous, we conclude that the error was harmless. "An erroneous exercise of discretion in admitting or excluding evidence does not necessarily lead to a new trial. [We] must conduct a harmless error analysis to determine whether the error 'affected the substantial rights of the party.' If the error did not affect the substantial rights of the party, the error is considered harmless." State v. Nieves , 2017 WI 69, ¶ 17, 376 Wis. 2d 300, 897 N.W.2d 363 (citation omitted; alteration in original). An error in admitting or excluding evidence "affects the substantial rights of a party if there is a reasonable probability of a different outcome." Id. (citation omitted). Our courts have articulated several factors to consider in the harmless error analysis: "the frequency of the error, the importance of the erroneously admitted evidence, the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence, whether the erroneously admitted evidence duplicates untainted evidence, the nature of the defense, the nature of the State's case, and the overall strength of the State's case." State v. Harris , 2008 WI 15, ¶ 45, 307 Wis. 2d 555, 745 N.W.2d 397.
¶21 In this case, we conclude that the exclusion of V.K.'s testimony was harmless as its purpose was to provide support to what Gomoll had already testified to, it provided only indirect support of Gomoll's asserted state of mind, and the State did not contest or provide contradicting evidence that S.S. pushed Gomoll down the stairs. Further, the State had a strong case: Gomoll committed the murder in front of a witness and Gomoll indicated in a text message that he was "going to blow [S.S.'s] brains out" minutes before the murder. Accordingly, there was no reasonable probability of a different outcome directly as a result of V.K.'s failure to testify.
Sentence Modification or Resentencing
¶22 Gomoll seeks sentence modification or resentencing on the ground that a new factor has been established, namely the impact that Gomoll's diabetes had on his mental health. Gomoll argues that his diabetes diagnosis is a "new factor" as it "critically" affected his mental state and the court was only aware that he suffered from the disease, not the extent of its impact, at sentencing.
¶23 A circuit court has inherent authority to modify a criminal sentence, and it may modify a sentence upon, among other things, the defendant's showing of a "new factor." State v. Harbor , 2011 WI 28, ¶ 35, 333 Wis. 2d 53, 797 N.W.2d 828. A new factor is "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because ... it was unknowingly overlooked by all of the parties." Id. , ¶ 40 (quoting Rosado v. State , 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975) ). "The existence of a new factor does not automatically entitle the defendant to sentence modification. Rather, if a new factor is present, the circuit court determines whether that new factor justifies modification of the sentence. In making that determination, the circuit court exercises its discretion." Id. , ¶ 37 (citation omitted). The defendant has the burden of proof to demonstrate existence of a new factor by clear and convincing evidence, and we review whether those facts establish a new factor independent of the circuit court. Id. , ¶ 36.
¶24 Gomoll's diabetes is not a new factor. First, Gomoll has not shown that he was unaware of the impact that his diabetes had on his mental state at the time of sentencing. In fact, Gomoll testified at the Machner hearing that he had "reviewed the medical literature throughout [his] lifetime explaining and describing the impact of stress and alcohol on the mind and body of a diabetic" and he had "firsthand experience" of "the impact of diabetes on perception of reality." Gomoll confirmed that he was aware of all this information prior to trial. A factor is not new if a defendant was aware of it prior to trial. See State v. Crockett , 2001 WI App 235, ¶ 14, 248 Wis. 2d 120, 635 N.W.2d 673. Further, all parties were aware that Gomoll was diabetic. As previously discussed, defense counsel acknowledged that they had discussed Gomoll's diabetes, but he had not considered it as a defense. The circuit court explained, "[T]his was information that was available at the time and the reason it was [not] brought up is because it was not an issue and no one thought it was an issue." Accordingly, we conclude that Gomoll has failed to satisfy the burden to demonstrate a new factor.
¶25 For the foregoing reasons, we conclude that the circuit court properly denied Gomoll's motion for postconviction relief and we uphold the judgment of conviction.
By the Court .-Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

M.G. had not been drinking.

Gomoll attempted to introduce the testimony of his aunt, V.K., who would have testified that S.S. told her that she pushed Gomoll down the stairs. The State objected to the testimony as hearsay evidence, and the circuit court agreed.

The jury was instructed on first-degree intentional homicide, second-degree intentional homicide, the privilege of self-defense, and unnecessary defensive force.

State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

Self-defense in the realm of intentional homicides has two categories: perfect self-defense and imperfect self-defense. Proof of perfect self-defense provides a complete exoneration of criminal liability, whereas proof of imperfect self-defense does not exonerate criminal liability, it mitigates culpability, i.e., a sentence less than life in prison. State v. Head , 2002 WI 99, ¶¶ 66, 85, 255 Wis. 2d 194, 648 N.W.2d 413.

Defense counsel indicated that he attempted to obtain a plea offer of second-degree intentional homicide from the State, but he was unable to do so.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

As we do not find that defense counsel performed deficiently, we need not reach the prejudice prong. See Strickland v. Washington , 466 U.S. 668, 697 (1984). Further, we concur with the State that Gomoll has forfeited his argument as to defense counsel's ineffective assistance for failing to introduce the allegedly mitigating evidence of Gomoll's diabetes at sentencing. See State v. Eugene W. , 2002 WI App 54, ¶ 13, 251 Wis. 2d 259, 641 N.W.2d 467 ; State v. Elm , 201 Wis. 2d 452, 463, 549 N.W.2d 471 (Ct. App. 1996). As the State explained, Gomoll failed to address this argument in his postconviction motion, he did not question defense counsel about it at the Machner hearing, and the circuit court did not rule on this argument. The only reference we see to this issue is a paragraph in Gomoll's postconviction brief, which fails to develop any argument related to the facts of this case.
Even if the alleged error was not waived, we are confident that defense counsel's alleged failure to put forth evidence of Gomoll's mental state during sentencing did not prejudice Gomoll. When the circuit court denied Gomoll's request for sentence modification, it explained that knowledge regarding Gomoll's alleged mental state as a result of his diabetes would not "have changed anything." See State v. Harbor , 2011 WI 28, ¶ 75, 333 Wis. 2d 53, 797 N.W.2d 828.